Lloyd Miller (Miller) was the tenured principal of Gadsden High School, a school under the administrative authority of the Gadsden City Board of Education (Board). §§ 16-11-1 to -27, Code of Alabama 1975. After an extensive investigation and audit of school financial records, the Board, on February 23, 1982, sent a letter as required by § 16-24-9 of the Code to Miller, giving notice of the proposed cancellation of his employment. Miller duly gave notice of his intent to contest his cancellation. The required public hearing was set for March 18, 1982.
Prior to the hearing, Miller sought, in the U.S. District Court for the Northern District of Alabama, an order restraining his suspension without pay and returning him to his job, pending the hearing before the Board. There was an evidentiary hearing before the district judge, after which he was granted the requested relief. Thereafter, the hearing was duly held by the Board beginning on March 18, 1982, and ending on March 29, 1982. The employment of Miller as principal was cancelled by resolution of the Board on April 1, 1982. He was retained by the Board in teacher status.
Miller appealed to the Alabama State Tenure Commission, which affirmed the action of the Board. He then filed a petition for mandamus against the tenure commission in the Circuit Court of Etowah County. The petition was denied on August 30, 1983. The denial of the writ of mandamus was appealed to this court and submitted for our consideration on February 10, 1984.
Miller, relying upon testimony of members of the Board before the federal district court and in prehearing depositions, presented to the Board at the adjudicative hearing the issue of denial of constitutional due process because of the bias and prejudgment of members of the Board. That issue has been resubmitted in hearings before the tenure commission, the circuit court and now here. It is submitted to this court as the only issue of the appeal.
Each of the reviewing bodies — the Board, the tenure commission and the circuit court — have disallowed the contention of Miller that he was denied due process. It appears that the contention of Miller that the Board was biased against him is primarily premised upon the fact that the Board performed, as provided by law, in *Page 303 
the combined investigative, charging and adjudicative capacities. To establish prejudgment bias, he relies upon the fact that the investigative phase produced evidence against him which so prejudiced the Board that it suspended him from his position of principal without pay and caused it to direct notice to him of the intent to cancel his employment. Miller presents the testimony of Board member Cosper that the evidence had caused him to determine Miller should be dismissed before the hearing, subject, however, to having his mind changed by evidence from Miller. Cosper, it developed, did not participate in the hearing and subsequently resigned from the Board because of a conflict of interest. Cosper in his testimony had referred to "our minds" in speaking of the evidence presented to the Board. Miller's contention that Cosper spoke for the prehearing attitude and state of mind of the entire Board is not acceptable, especially in view of the fact that each member of the Board who subsequently participated in the hearing stated his or her own state of mind.
We must begin discussion with the established proposition that Miller had a legitimate property right in his position as principal of Gadsden High School protected, under the fourteenth amendment of the Constitution of the United States, from deprivation without due process of law. Board of Regentsv. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). It has further been established that "a fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases." In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625,99 L.Ed. 942 (1955); Staton v. Mayes, 552 F.2d 908, 913 (10th Cir.), cert. denied, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195
(1977). However, due process is not an inflexible term. The Supreme Court said in the case of Hortonville Joint SchoolDistrict v. Hortonville Education Association, 426 U.S. 482,494, 96 S.Ct. 2308, 2314, 49 L.Ed.2d 1 (1976), "Determining what process is due in a given situation requires the Court to take into account the individual's stake in the decision at issue as well as the State's interest in a particular procedure for making it."
Miller's interest in this proceeding to determine if his contract should be cancelled is important and self-evident. However, the risk of property loss is not as important an interest as the loss of liberty, and then may not require the same degree of protection from an erroneous ruling. HortonvilleJoint School District, supra at 496, 96 S.Ct. at 2315.
The Legislature of Alabama, by enacting Chapter 11 of Section 16, Code of Alabama 1975, has vested in the Board the power necessary for the administration and management of the schools of the City of Gadsden. The Board is charged with the duty and responsibility of employment and dismissal of teachers and all school personnel subject to the provisions of Chapter 24 of Section 16 of the Code. Chapter 24, commonly referred to as the Alabama Teacher Tenure Law, clearly delineates the procedures for protecting both the teacher's property interest and the interest of the State in insuring the proper relationship between the respective Boards of Education and their employees. Chapter 24 provides that no teacher with tenure may be transferred nor their employment canceled without notice of cause and opportunity to be heard thereon at a public hearing before the employing Board. It is specifically provided therein that neither transfer nor cancellation may be based upon personal or political reasons of members of the Board. §§16-24-5, -8, Code of Alabama 1975.
Thus the law itself prohibits Miller's dismissal for personal or political bias of the Board. Miller does not charge directly
either of those two types of bias. It is in cases where it has been shown the adjudicator has a personal or pecuniary interest in the outcome, or where he has been shown to be the target of personal abuse or criticism from the party before him, that the probability of actual bias of the decisionmaker has been considered too high to be constitutionally tolerable. Withrowv. *Page 304 Larkin, 421 U.S. 35, 48, 95 S.Ct. 1456, 1465, 43 L.Ed.2d 712
(1975).
However, the Court said in Withrow:
 "The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.
 "Very similarly claims have been squarely rejected in prior decisions of this Court."
The Court in Withrow, after referring to various cases decided by it in which it had approved commissions such as the Federal Trade Commission and National Labor Relations Board, and a Social Security examiner acting as both facts developer and adjudicator, said: "The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing." Id. at 55, 95 S.Ct. at 1468.
The Court thereafter cited to the matter of judges issuing arrest warrants on the basis of probable cause or holding preliminary hearings, binding the defendant over for trial and thereafter making the determination of guilt or innocence. It was remarked that neither of such pretrial involvements had been considered to raise any constitutional barrier to a fair trial. The court then said in Withrow:
 "It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings and then to participate in the ensuing hearings. This mode of procedure does not violate the Administrative Procedure Act, and it does not violate due process of law."
Withrow v. Larkin, supra at 56, 95 S.Ct. at 1469.
In Hortonville it was further said:
 "Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not capable of judging a particular controversy fairly on the basis of its own circumstances." (Citations omitted.)
Hortonville Joint School District, supra426 U.S. at 494, 96 S.Ct. at 2314.
It is clear to this court that from the testimony in this case relating to those Board members who in fact acted as adjudicators, there was no more evidence of bias or the risk of bias or prejudgment than inhered in the fact that the Board had investigated, found probable cause, charged Miller and, after adversary hearing, found the charge sustained. They each stated that though they had been submitted an official audit of the financial condition of the school, had heard from the superintendent as to matters alleged to have been committed by Miller and discussed those matters in relation to the bringing charges for cancellation, they had open minds entering the hearing and were prepared to decide the case only on the evidence produced at the hearing. The evidence presented at the hearing upon the charges under any view was preponderantly in favor of the findings of the Board. We perceive the Board to have proceeded in this matter as directed by the Teacher Tenure Act, and as required by that act in every case. We find no denial of constitutional due process.
It is finally to be noted that the Teacher Tenure Act of Alabama mandates a three-tier review of the propriety of the proceedings before the Board and a review of the record of the evidence to determine if the findings of the Board were unjust. This case was first reviewed by the state *Page 305 
Tenure Commission. That commission is composed of seven members, at least five of whom are teachers, superintendents or school board members. The secretary of the commission is the executive secretary of the Alabama Education Association. The commission was created by the legislature to protect the teacher from any unjust action of an employing school board.State Tenure Commission v. Madison County Board of Education,282 Ala. 658, 213 So.2d 823 (1968). The tenure commission, after review in this case, found the Board to have proceeded correctly and its decision not to have been unjust. The decision of the commission is final and subject to review by mandamus only to determine if there was procedural error by the commission or if its action was unjust because contrary to the preponderance of the evidence. Alabama State Tenure Commissionv. Mountain Brook Board of Education, 343 So.2d 522 (Ala. 1976), on remand, 343 So.2d 528 (Ala.Civ.App. 1977). A review of the decision of the tenure commission by the Circuit Court of Etowah County was held at the request of Miller. The court found the action of the commission to be proper and not unjust. This court has now reviewed the matter and finds no error.
It may be noted that there is no contention that there was any lack of procedural due process nor insufficiency of the evidence to support the action of the Board. It must be concluded that because this case has proceeded through all of the statutory requirements for hearing and review and because of the facts presented, there is slight foundation for a claim of an unfair hearing and lack of due process. Staton v. Mayes,supra.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.