This is a teacher tenure case.
On June 3, 1982 the Conecuh County Board of Education met and unanimously voted to cancel the employment contract of Samuel Gantt. Gantt had been a teacher and principal at the Conecuh County High School since he was appointed to the position by federal court order in 1981.
Gantt received a letter on June 11, 1982, notifying him of the board's action and enumerating thirty specific reasons for his dismissal. The meeting at which the board determined to cancel Gantt's contract came after a great deal of unrest in the community concerning Gantt's performance on the job, with complaints coming from both black and white parents of students. *Page 1106 
Gantt filed for and was granted a temporary restraining order in federal district court enjoining the board's action. His request for a permanent injunction was subsequently denied.
The school board sent Gantt another notice of the proposed cancellation of his employment contract on July 23, 1982, again enumerating the thirty charges contained in the earlier notice. Subsequently, a hearing on these charges as authorized by section 16-24-9, Code 1975, was scheduled for October 11, 1982. On this date the board met, held a full hearing, and voted to discharge Gantt.
Gantt appealed his contract cancellation to the Alabama State Tenure Commission. In its January 3, 1983 order the Tenure Commission found that the evidence supported the board's cancellation of Gantt's contract, but reversed the board's order on the ground that the decision was arbitrarily unjust because Gantt had been denied due process of law due to an "intolerably high risk of bias on the part of the school board."
The Circuit Court of Conecuh County subsequently granted the school board's petition for a writ of mandamus, thus vacating the Tenure Commission's order and affirming the school board's cancellation of Gantt's contract.
The Tenure Commission appeals, contending that sufficient evidence existed to support its conclusion that the school board's action was arbitrarily unjust and that the circuit court erred to reversal in granting the school board's petition for a writ of mandamus. We agree and reverse.
In reviewing actions of the Tenure Commission, the circuit court sits as an appellate court, Alabama State TenureCommission v. Oneonta City Board of Education, 376 So.2d 197
(Ala.Civ.App.), cert. denied, 376 So.2d 199 (Ala. 1979), and it is empowered to reverse the Tenure Commission only for failure to comply with the statutory procedures or when the Tenure Commission's action is unjust in that it contradicts the preponderance and overwhelming weight of the evidence. SumterCounty Board of Education v. Alabama State Tenure Commission,352 So.2d 1137 (Ala. 1977); Franklin v. Alabama State TenureCommission, 482 So.2d 1214 (Ala.Civ.App. 1985); § 16-24-38, Code 1975. Our scope of review is the same as that of the circuit court: whether there is sufficient evidence to support the action of the Tenure Commission. County Board of Educationv. Alabama State Tenure Commission, 392 So.2d 842 (Ala.Civ.App. 1980), cert. denied, 392 So.2d 844 (Ala. 1981); Sumter CountyBoard of Education v. Alabama State Tenure Commission, supra.
No issue has been raised concerning the statutory procedures. Thus, the dispositive issue raised for our response is whether the action of the Tenure Commission was against the great weight and preponderance of the evidence. The Tenure Commission, in reversing the school board's decision to terminate Gantt's contract, found that:
 "Upon consideration of the record as well as the briefs submitted and oral argument by counsel for both the teacher and the Board, the Tenure Commission finds that although the cancellation was sustained by the evidence, the action of the Board was arbitrarily unjust because the teacher was denied due process in that there was evidence of an intolerably high risk of bias on the part of the school board." (emphasis added)
The board met on June 3, 1982 and voted to send Gantt a letter informing him of its intent to not review his contract. Subsequent to the receipt of this letter, Gantt took the depositions of the board members, on July 7, 1982.
The Tenure Commission argues in brief that in depositions taken after the letter to Gantt but before his hearing the board members showed their bias against Gantt. We agree.
The depositions reveal the following.
Comer Bonds, board member, stated that if there were ever a school board meeting on the cancellation of Mr. Gantt's contract he intended to vote to cancel Mr. Gantt's contract. In fact, Bonds stated that Gantt had previously responded to some of the *Page 1107 
charges against him, but Bonds felt that these responses were unprofessional. Bonds stated, too, that he had already formed an opinion (prior to the hearing) that Gantt had not done a good job as principal. Willie Crutchfield, board member, stated that he had always felt that Gantt was incapable of handling the principalship even prior to the board's meeting on June 3, 1982. When asked by Mr. Gantt's attorney whether he would have voted to terminate Gantt's contract had a hearing been held, Crutchfield responded "Is there a reason to change it? I mean we made a decision based on the facts." He further stated that had there been a hearing he would have voted to let Gantt go and that he would vote to let Gantt go tomorrow. Another board member, Frank Chavers, stated that as far as the board was concerned Gantt was relieved of his duties as principal of Conecuh County High School as of July 1, 1982. Michael Wayne Lanier, board member, stated that he voted against Gantt's appointment as principal of Conecuh County High School in 1981. Lanier stated that he had visited the school many times after Gantt's appointment and talked to Gantt. He stated that he did not need to look at the evidence presented before the board in favor of cancelling Gantt's contract since he had already formed an opinion based on his personal observations. His personal opinion was that there was sufficient justification to terminate Gantt's employment. Paul Watson, board member, stated that he would not vote to cancel the contract until after the board held a hearing. Watson was not present at Gantt's hearing and did not vote on his dismissal. His position, therefore, is not at issue in this case.
In Chandler v. City of Lanett, 424 So.2d 1307 (Ala. 1982), our supreme court addressed a similar fact situation. Chandler was dismissed from his position as police officer on the basis of various offenses. The mayor of Lanett sent Chandler a letter advising him of the dismissal and his right to a hearing before the city council. After the hearing, the city council voted to uphold Chandler's discharge. On appeal, Chandler claimed that the city council denied him procedural due process and equal protection of the law in the hearing. The supreme court agreed, finding that the mayor indicated in his letter to Chandler that he had already decided before the hearing that Chandler was guilty of the "intolerable offenses" charged. The supreme court felt that this presented an intolerably high risk that the mayor would continue to be committed to this position once a hearing was held and would be likely to avoid the appearance of having changed positions. Another councilman had reached a decision to vote to uphold Chandler's discharge at the hearing before any evidence was presented. The supreme court found that the evidence clearly showed a bias on the part of this councilman. The supreme court, thus, concluded that the city council had denied Chandler due process in permitting the mayor and councilman to participate in the hearing.
Similarly, in the case before us, the board members' comments in deposition certainly suggest that they had decided that Gantt's contract should be cancelled and that this decision would be adhered to should a hearing on the matter be held. In further support of such a view, the evidence reveals that the school board announced a vacancy in the principalship at Conecuh County High School on July 1, 1982. Gantt's hearing on his proposed cancellation was not held until October 11, 1982. (A hearing had been set for July 7, 1982 but was cancelled.) Based on these facts, we therefore believe that the risk of prejudgment in Gantt's hearing was intolerably high and that a definite possibility existed that some of the board members were committed at the hearing to the position they took in their depositions.
In Board of Dental Examiners v. King, 364 So.2d 311
(Ala.Civ.App. 1977), rev'd on other grounds, 364 So.2d 318
(Ala.), on remand, 364 So.2d 319 (Ala.Civ.App. 1978), we stated:
 "[T]he mere fact that a professional regulatory board (which has received legislative authority to investigate and adjudicate charges against members of its profession) has had prior contact with the particular individual or considered other, *Page 1108 
separate charges against him, is not sufficient, in the absence of some showing to the contrary, to demonstrate that the board's members are biased. . . . [A] party seeking to demonstrate prejudice or antipathy on the part of one or more board members must show at the outset of (or during) the hearings before the board that the risk of bias is intolerably high or such that there is a substantial temptation on the part of the members sitting in their quasi-judicial capacity to pre-judge the case with regard to any issue to be presented (or actually presented) by the party challenging the board's impartiality." (citations and footnote omitted)
In the matter before us, the evidence presented goes beyond
mere knowledge of the charges against Gantt or any prior contacts that the board members might have had with Gantt. The evidence reasonably suggests that the board members had prejudged the case against Gantt. Moreover, the facts in this case go beyond the facts found in Miller v. Alabama StateTenure Commission, 451 So.2d 301 (Ala.Civ.App. 1984). In Millerv. Alabama State Tenure Commission, supra, Miller was given a hearing before the school board on a proposed cancellation of his contract of employment as principal. After the hearing the board members voted to cancel his contract. Miller charged on appeal that the board was biased against him in the hearing, primarily because of the board's combined investigative, charging, and adjudicative capacities. The one board member who stated that he determined that Miller should be dismissed before the hearing, resigned and did not participate in the hearing. The remaining board members stated that they had open minds when they entered the hearing and were prepared to decide the case only on the evidence presented at the hearing. We, therefore, found no evidence of bias or prejudgment on the part of the board.
In the case sub judice the board refused to permit Gantt's attorney to poll the members at the hearing to determine if they were already committed to a decision concerning Gantt's employment. The board members were therefore given an opportunity to rehabilitate themselves at the hearing and declare their impartiality but declined to do so. Absent any indication to the contrary, the board apparently concluded prior to the hearing that Gantt's contract should be terminated. "The right to a fair trial before an impartial tribunal is an important fundamental right." Ex parteGreenberg, 395 So.2d 1000 (Ala. 1981). We conclude that the board denied Gantt this right. We find that there is sufficient evidence to support the Tenure Commission's finding that Gantt was denied due process because of an intolerably high risk of bias on the part of the school board. We therefore reverse the judgment of the circuit court granting the school board's petition for writ of mandamus and remand this cause to the circuit court with directions to enter an order affirming the decision of the Tenure Commission.
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., and HOLMES, J., concur.