849 F.2d 1376
 47 Fair Empl.Prac.Cas. 616,
47 Empl. Prac. Dec. P 38,147, 47 Ed. Law Rep. 450
 Charles H. CARLISLE, Plaintiff-Appellant,
v.
PHENIX CITY BOARD OF EDUCATION; Clifford S. Smith,
individually and as Superintendent of Education for the
Phenix City Board of Education; A.A. Roberts, Jr.; Neal C.
Deanhardt; C.F. Floyd, II; Theoria Y. King, et al.; and
Lamar Powers, individually and in their official capacities
as members of the Phenix City Board of Education,
Defendants-Appellees.
 No. 87-7673.
 United States Court of Appeals,
Eleventh Circuit.
 July 20, 1988.
 
 Kenneth L. Thomas, Massey, Means & Thomas, Solomon S. Seay, Jr., Montgomery, Ala., for plaintiff-appellant.
 Sydney S. Smith, Smith & Smith, Phenix City, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before JOHNSON, Circuit Judge, HENDERSON*, Senior Circuit Judge, and PITTMAN**, Senior District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 This is an action brought under 42 U.S.C.A. Sec. 1983 and under Title VII, 42 U.S.C.A. Secs. 2000e, et seq. This is an Alabama teacher tenure case. Ala.Code Sec. 16-24-1, et seq. The district court granted summary judgment because of res judicata and collateral estoppel. We reverse.
 
 I. BACKGROUND
 
 2
 Carlisle was the principal of Susie E. Allen Elementary School from 1982 until 1984 when he was transferred to assistant coordinator of the Alternative Learning Center, a position of equal pay. Superintendent Clifford Smith recommended the transfer to the Phenix City Board of Education. The school board voted and, upholding Smith's decision, gave four reasons for the transfer: 1) lack of confidence in Carlisle's leadership ability; 2) staff dissension resulting from poor leadership; 3) low staff morale; and 4) the superintendent's professional opinion that Carlisle provided ineffective leadership.[1] Carlisle requested a hearing, for which Carlisle employed counsel and which took place over four days. The board again voted and approved the transfer. Carlisle appealed the board's decision to the Alabama State Tenure Commission. The tenure commission reversed the board decision. The board then petitioned the Russell County Circuit Court for a writ of mandamus. The circuit court issued the writ and vacated the commission's reversal, thus reinstating the board's decision. The tenure commission appealed to the state court of civil appeals, which affirmed the circuit court. Alabama State Tenure Comm'n v. Phenix City Bd. of Ed., 467 So.2d 263 (Ala.Civ.App.1985). A motion for rehearing was rejected as untimely and no writ of certiorari was sought.
 
 
 3
 Carlisle raised a claim of discrimination with the EEOC and received a right-to-sue letter from November 21, 1986. He then filed the present suit on January 9, 1987, alleging that he was transferred because of his race in violation of Title VII and section 1983. The suit seeks declaratory and injunctive relief fully to restore Carlisle's status. On October 8, 1987, the district court held the suit precluded and granted defendants' motion for summary judgment. Because the parties allege no disputed issues of fact in this case, the summary judgment is reviewed de novo as to the correct application of the law.
 
 II. ANALYSIS
 
 4
 In deciding whether res judicata or collateral estoppel bar Carlisle's section 1983 and Title VII suit, we adhere to the Full Faith and Credit Clause, U.S. Const., Art. IV, Sec. 1, implemented by 28 U.S.C.A. Sec. 1738:
 
 
 5
 Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory, or Possession from which they are taken.
 
 
 6
 The Supreme Court has been unambiguous in directing federal courts regarding section 1983 and Title VII suits fully to apply state principles when considering preclusive effects of state decisions. Migra v. Warren City School Dist., 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (Sec. 1983 preclusion); Kremer v. Chemical Constr. Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (Title VII preclusion).
 
 
 7
 The state proceedings in this case originated from an administrative hearing. This Circuit accords preclusive effects to judicial appeals following state administrative proceedings in accordance with that state's preclusion law. Casines v. Murchek, 766 F.2d 1494 (11th Cir.1985) (no preclusion); Gorin v. Osborne, 756 F.2d 834 (11th Cir.1985) (preclusion). A plaintiff need not seek reversal of an adverse administrative decision through state judicial appeals, but once that course is taken, federal relitigation is foreclosed. University of Tenn. v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635, 54 U.S.L.W. 5084 (1986); Sharpley v. Davis, 786 F.2d 1109 (11th Cir.1986).
 
 
 8
 The benchmark Alabama case reciting the elements necessary for a finding of res judicata or collateral estoppel is Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190 (Ala.1978). According to Wheeler:
 
 
 9
 The elements of res judicata are as follows: 1) prior judgment rendered by court of competent jurisdiction; 2) prior judgment on the merits; 3) parties to both suits substantially identical; and 4) same cause of action present in both suits. If these elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action.
 
 
 10
 Collateral estoppel operates where the subsequent suit between the same parties is not on the same cause of action. Requirements for collateral estoppel to operate are 1) issue identical to one involved in previous suit; 2) issue actually litigated in prior action; and 3) resolution of the issue was necessary to the prior judgment. If these elements are present, the prior judgment is conclusive as to those issues actually determined in the prior suit.
 
 
 11
 364 So.2d at 1199 (citations omitted). We consider first issue preclusion and then claim preclusion.
 
 A. Collateral Estoppel
 
 12
 Collateral estoppel in this case depends on whether the race discrimination issue was litigated and decided in the state judicial proceedings. If the race claims were not decided in the course of the state appeal, there can be no collateral estoppel. Conley v. Beaver, 437 So.2d 1267 (Ala.1983) (collateral estoppel because actually litigated and decided); Alabama Farm Bureau Mutual Ins. v. Moore, 349 So.2d 1113 (Ala.1977) (no collateral estoppel because not litigated and decided).
 
 
 13
 The district court concluded that race was a litigated issue in the state proceedings. There is little in the record to support this statement.[2] The district court relied on language from the civil appeals court: "Cross-examination brought out implications of racial bias in the teachers and an absence of morale problems and dissension. However, there was no direct evidence on this point." 467 So.2d at 265. This finding only remotely relates to Carlisle's Title VII claim. In this federal suit Carlisle is seeking to show that the superintendent and the board were racially motivated in transferring him. The civil appeals court's statement refers to only alleged racial favoritism reflected in the survey responses: that black teachers evaluated Carlisle more favorably than did white teachers. Although the board based its transfer decision in part on the survey results, the failure to substantiate a teacher bias towards Carlisle based on race did not resolve allegations of board bias.
 
 
 14
 What was decided by the state appeals was that the board did have legitimate reasons that were not political or personal for transferring Carlisle. 467 So.2d at 265. Carlisle could be thus collaterally estopped from asserting that there were no legitimate reasons for his transfer, but he cannot be estopped from asserting that there was an illegitimate racial reason in addition. The absence of racial bias on the part of the board was not a finding necessary to the judgment and was not made in the course of the state proceedings.[3] The district court was wrong to base summary judgment on collateral estoppel.
 
 B. Res judicata
 
 15
 Res judicata in this case depends on whether the parties are substantially the same in the federal and state actions, whether this case concerns the same cause of action as the case in state court, and whether the racial discrimination issue could have been litigated and decided in state court.
 
 1. Identity of Parties
 
 16
 The appellant in this case is only Carlisle. Formally, by statutory directive, the state judicial appeals contraposed the school board against the tenure commission, not Carlisle.[4] Carlisle and the tenure commission are, however, parties in privity. In Alabama, "a person may be bound by a judgment even though not a party to a suit if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." Century 21 v. Alabama Real Estate Comm'n, 401 So.2d 764 (Ala.1981); Hurt v. Pullman Inc., 764 F.2d 1443 (11th Cir.1985). The district court found that the "[p]laintiff was the real party in interest in the State court proceedings, and his interests were fully represented therein, nominally by the Commission, as well as by his own able counsel who properly represented the Commission in the State trial and appellate courts." Only closely aligned interests could have enabled Carlisle's counsel to represent the tenure commission during the state judicial proceedings without a conflict of interest. Even more indicative is the fact that, although the civil appeals court styles the case as the board against only the commission and its members, the opinion begins with the observation that "Mr. Carlisle and the Tenure Commission appeal." 467 So.2d at 264. We conclude that the tenure commission acted in a representative capacity for Carlisle.[5]
 
 2. Cause of Action
 
 17
 Alabama has used numerous tests to determine if two claims constitute the same cause of action. Prevalent is the "substantially the same evidence" test, Braggs v. Jim Skinner Ford, Inc., 432 So.2d 466 (Ala.1983); George v. White, 837 F.2d 1516 (11th Cir.1988). Alabama has also used the "single transaction" test, Sullivan v. Walther Builders, Inc., 495 So.2d 655 (Ala.1986), and the "logical relationship" test, Brooks v. Peoples Nat. Bank of Huntsville, 414 So.2d 917 (Ala.1982). Even though evidence showing the truth of the stated reasons does not fully overlap with evidence showing the presence of illegitimate reasons, the state and federal claims are aspects of the same decision to transfer, see Broughton v. Merchants Nat. Bank, 476 So.2d 97 (Ala.1985), and any illegitimate reasons would have been a logical rebuttal to legitimate reasons, see Brooks, 414 So.2d 917. We conclude that the transfer hearing and the Title VII claim are part of the same cause of action as understood by Alabama law.
 
 3. Opportunity To Raise Claim
 
 18
 The final question, then, is whether Carlisle could have brought his federal claims in the state proceedings. In Alabama, res judicata extends not only to issues litigated, but also to any issue that could have been litigated. McGruder v. B. & L. Constr. Co., 331 So.2d 257 (Ala.1976).
 
 
 19
 Carlisle invoked his statutory right to have a hearing before the school board. Ala.Code Sec. 16-24-5. In turn, by statutory right of appeal, the tenure commission considered the board decision to transfer Carlisle to assure that "such action was [not] taken for political and personal reasons and that such action was not arbitrarily unjust." Id. at Sec. 16-24-7. In assessing the board decision, the tenure commission was statutorily bound to "the record of the proceedings before the board and the evidence as recorded at such hearing." Id.
 
 
 20
 The subsequent judicial appeals before the circuit court and the civil appeals court were likewise limited to a review of the record before the board. The review was, however, of the tenure commission's action, not a direct review of the board's action. Alabama State Tenure Comm'n v. Mt. Brook Bd. of Ed., 343 So.2d 522, 525 (Ala.1976).
 
 
 21
 An Alabama court considering a teacher tenure appeal "is empowered to reverse the Tenure Commission only for failure to comply with the statutory procedures or when the Tenure Commission's action is unjust in that it contradicts the preponderance and overwhelming weight of the evidence." Alabama State Tenure Comm'n v. Conecuh County, 495 So.2d 1105, 1106 (Ala.Civ.App.1985); Miller v. Alabama State Tenure Comm'n, 451 So.2d 301, 305 (Ala.Civ.App.1984); County Bd. of Ed. of Shelby County v. Alabama State Tenure Comm'n, 392 So.2d 842, 844 (Ala.Civ.App.1980). Sufficiency of the evidence is focused on a "test [of] the truth and validity of the reasons, and to determine whether such reasons serve a legitimate or reasonable administrative purpose or whether they are an abuse of administrative discretion and thus arbitrary and unjust." Alabama State Tenure Comm'n v. Franklin County Bd. of Ed., 336 So.2d 187, 189 (Ala.Civ.App.1976); see also Mt. Brook, 343 So.2d at 525, Tenure Comm'n v. Anniston City Bd. of Ed., 57 Ala.App. 198, 326 So.2d 760 (1976). In gauging the reasons and supporting evidence, the appeals court may not "challenge the wisdom or correctness of the administrative acts of the Board.... It is only the truth of the stated reason which may be attacked." State Tenure Comm'n v. Pike County Bd. of Ed., 349 So.2d 1173, 1175 (Ala.Civ.App.1977).
 
 
 22
 Given this limiting language, there are few cases in which Alabama courts have considered broader issues on teacher tenure appeal. We have found only two. As an aspect of arbitrary unjustness, due process concerns were raised and considered in Miller, 451 So.2d 301 (Ala.Civ.App.1984), and in Conecuh, 495 So.2d 1105 (Ala.Civ.App.1985).
 
 
 23
 We are most interested in how and when the due process claims were raised. The court in Miller addressed general allegations of insufficient due process because of the school board's combined investigative, charging, and adjudicative capacities. It found no due process violation. Significantly, the issue in Miller did not originate on appeal but was first raised before the board itself: "Miller ... presented to the Board at the adjudicative hearing the issue of denial of constitutional due process because of the bias and prejudgment of the members of the Board. That issue has been resubmitted in hearings before the tenure commission, the circuit court, and now here." Id. at 302.
 
 
 24
 In Conecuh, however, the timing was different. The appellant objected to the specific conduct of the board and first raised the issue before the tenure commission. The tenure commission's reversal was upheld because the appellate court found sufficient evidence in the record to support the commission's finding that "the action of the Board was arbitrarily unjust because the teacher was denied due process in that there was evidence of an intolerably high risk of bias on the part of the school board." 495 So.2d at 1106. Conecuh instructs that due process claims can be raised before the tenure commission, although not newly on judicial appeal. Id.
 
 
 25
 Conecuh does not, however, dictate the outcome of this case. Given the specific nature of Carlisle's federal claims and the specific evidence supporting those claims, we are constrained from concluding that Carlisle could have raised his racial bias claim before the tenure commission. Carlisle in this federal suit specifically alleges racial discrimination. We are aware of no Alabama tenure commission that has considered allegations of racial discrimination and it cannot be said with assurance that Carlisle's reviewing commission was or would have been open to allegations of a discriminatory transfer. It is arguable that an allegation of discriminatory decisionmaking would fall within the ambit of illegitimate "personal" reasons, but such a meaning of personal reasons has never been ascribed by an Alabama court considering a tenure commission appeal.[6] It is arguable that discrimination would constitute arbitrary unjustness, but findings of unjustness have not gone beyond insufficient evidence of legitimate reasons and excessive risk of bias.[7] Full faith and credit does not require that we cast the net of Alabama preclusion wider than cast by Alabama courts themselves. Jones v. City of Alton, 757 F.2d 878 (7th Cir.1985); Boykins v. Ambridge Area School Dist., 621 F.2d 75 (3d Cir.1980).
 
 
 26
 Our conclusion that procedural delimitations and precedent do not justify our assumption that Carlisle could have raised his discrimination claim before the tenure commission is fortified by the timing of the events supporting his claim. Carlisle alleges facts to show disparate treatment as compared to a white principal that was similarly situated. Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1186 (11th Cir.1984) (alleging disparate treatment for "nearly identical" conduct). Carlisle argues discrimination because the white principal suffered no lasting repercussions from two allegedly more egregious incidents: (1) an extramarital affair with a teacher in his school, begun in 1984 and made known to the superintendent in late spring of 1985, and (2) private use in May 1984 of the school board's plumber followed by an admonishing letter from the superintendent but no further action. This similar situation allegedly did not become known to Carlisle and was not substantiated until the superintendent's letter surfaced in 1985 in Carlisle's EEOC investigation and until a divorce action in March 1985 formally alleged the adultery. The board sent its transfer letter to Carlisle on July 22, 1984, and the tenure commission reversed the board on August 16, 1984. We cannot say that as a factual matter Carlisle "could have brought" the claim now raised in his federal complaint.[8] As we have said before, "claims based on conduct subsequent to prior litigation are not precluded." Kilgoar v. Colbert County Bd. of Ed., 578 F.2d 1033, 1035 (5th Cir.1978); Dawkins v. Nabisco, Inc., 549 F.2d 396, 397 (5th Cir.1977).
 
 III. CONCLUSION
 
 27
 Summary judgment was erroneously granted on the bases of collateral estoppel and res judicata. We therefore REVERSE and REMAND for further proceedings.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation
 
 
 [1]
 The superintendent's recommendation to transfer Carlisle was precipitated by an alleged incident in which Carlisle told a black substitute teacher, George Williams, that a white teacher, Betty Diaz, had eyes for him. Williams relayed the comment to Diaz, who took offense and filed a complaint with the school board. Carlisle denied making the comment to Williams, but the superintendent decided to survey the staff under Carlisle to ascertain morale at the school. Some of the survey responses indicated low morale at the school and low confidence in Carlisle's ability to lead the school
 
 
 [2]
 Our review of the record has revealed only a few references to race. The occasional identification of the race of individuals named in the board hearing does not amount to "litigation" of the race issue. The only substantive assertion of racial bias came during cross-examination of the school superintendent:
 Q: I'm asking because I detected some disturbance, if my announcements of the records are correct, five persons who rated the morale as being poor, and the two persons who rated the morale as being satisfactory, unsatisfactory of seven were white?
 A: What does that have to do with it?
 Q: It might have a lot to do with it.
 A: They are teachers in the school.
 Q: Yeah, it might have a lot to do with it. And that's what I want to ask you, I suppose. You had, if my records are correct and my information is correct, nine whites and seven blacks. That were interviewed by response, seven of your whites responded that morale was either unsatisfactory or poor, seven--six of your nine, neither of the seven blacks rated morale as being unsatisfactory or poor. In your judgment is race there just a coincidence?
 A: You're talking about the relationship of responses to race?
 Q: No, sir, the fact that seven of nine whites said that morale was unsatisfactory or poor while zero of seven blacks rated it as unsatisfactory or poor. Now, my question is why?
 A: I can't answer that question, Mr. Seay.
 Q: Well, do you attach any significance to the fact, Mr. Superintendent, that seven of the nine whites rated it unsatisfactory and poor, yet--
 A: No, I don't.
 Q: --zero blacks rated it unsatisfactory.
 A: No, I don't, I don't attach any significance to it at all.
 Q: All right. So, the fact of that racial alignment just doesn't take on any significance at all?
 A: No, as far as I'm concerned, we've got sixteen teachers in that school, Mr. Seay.
 Q: Seven of whom happen to be black, nine of whom happen to be white, and I believe, I believe even you have indicated that?
 A: Well, I'll leave that to you.
 Q: Attitudes on admissity [sic] can be a significant morale factor?
 A: I'll leave that to you to attack the honesty of these teachers.
 Q: I'm not attacking. I'm just questioning.
 A: Well--
 Q: Just questioning. And I think anybody in a supervisory authority ought to raise the question when you see blacks lined up on one side of the street and whites lined up on the other side?
 A: Why should I? They are all teachers in our school district.
 Q: Because something is obviously wrong, that's why.
 A: Well, you're drawing that conclusion, I haven't.
 Q: All right. Maybe I've been colored longer than you've been white.
 
 
 [3]
 This case differs significantly from Kremer, 456 U.S. 461, 102 S.Ct. 1883, in which racial discrimination was the focused issue of the New York administrative proceedings and had been fully asserted and pointedly decided by the time of the federal proceedings
 
 
 [4]
 The state proceedings were officially styled as follows: (1) Carlisle v. Board (board hearing pursuant to statutory hearing procedure); (2) Carlisle v. Board (commission review as statutory administrative appeal); (3) Board v. Tenure Commission (circuit court appeal by writ of mandamus); and (4) Tenure Commission v. Board (civil court appeal on direct appeal from circuit court)
 
 
 [5]
 Carlisle does not argue lack of identity as to appellees, even though the state proceedings named only the school board, and this federal suit adds the individual members of the board and the school superintendent. We note that the district court held that the board, its members, and the superintendent were "all in privy with each other ... [and] there was substantial identity of the parties."
 
 
 [6]
 The most extensive definition we have found is less than helpful: "[W]e define 'personal reasons' to be those reasons personal to the Board members themselves and not to anyone else. The Board is given the authority to transfer, hence it would be inconsistent to say that the reasons for the transfer would be other than personal to the Board members." Lamar County Board of Education v. Steedley, 236 So.2d 337, 345 (Ala.Civ.App.1970)
 
 
 [7]
 We note that there is no precedent in Alabama for consideration on judicial appeal of an allegation of racial discrimination under the teacher tenure law. The review allowed on judicial appeal in fact does not accommodate a finding of injustice based on discriminatory treatment. This is because Alabama courts are directed to look only for a presence of legitimate reasons and an "absence" of illegitimate reasons, Lamar, 236 So.2d at 345, not a presence of illegitimate reasons
 
 
 [8]
 The district court found that "all evidence of what the Board did to other employees at later times for different offenses appears not to have been available at the time of the trial but was available during the appellate process. No motion for new trial or motion to stay so as to present newly discovered evidence was filed in the State trial or appellate courts." We do not disagree with this finding, but we disagree that it supports a finding of res judicata. A new claim could not have been added on judicial appeal, Conecuh, 495 So.2d 1105, nor would a new trial have been available. Ala.R.Civ.P. 60(b) allows motions for relief to be made within four months after a judgment because of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial [within thirty days after judgment] under Rule 59(b)." Timing alone justifies Carlisle's failure to avail himself of this "extreme remedy used only under extraordinary circumstances." Snowden v. United Steelworkers, 435 So.2d 62 (Ala.1983); Smitherman v. State, 521 So.2d 1050, 1055 (Ala.Cr.App.1987) ("newly discovered evidence must have been in existence, though not known, at the time of the original trial")