Charlie **FLOYD**, Plaintiff

v.

**AMITE COUNTY SCHOOL DISTRICT,** Amite County School Board; John Davis, In his Official Capacity and Individual Capacity; Beachum Williams, In his Official and Individual Capacity, Mary Russ, In her Official and Individual Capacity, Defendants.

**Civil Action No. 3:04CV78TSL–JCS.**

United States District Court, S.D. Mississippi, Eastern Division.

March 9, 2007.

See, also, 376 F. Supp.2d 693.

Gregg L. Spyridon, Philip G. Smith, Spyridon, Koch & Palermo, LLC, Metairie, LA, for Plaintiff.

James A. Keith, Kathryn R. Gilchrist, Adams and Reese, Janet McMurtray, Watkins Ludlam Winter & Stennis, P.A., Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants Amite County School District, the Amite County Board of Education, John Davis, Beachman Williams and Mary Russ to dismiss. Plaintiff Charlie Floyd has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be denied.

Plaintiff Charlie Floyd, who is black, filed this action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, alleging that he was discharged from his position as principal of Amite County High School for reasons of race. He sued the School District and School Board, District Superintendent Mary Russ and two members of the Board, John Davis and Beachman Williams, alleging that Russ, acting in concert and conspiracy with the School Board and/or certain Board members including Davis and Williams, all of whom are black, conspired to cause him to be discharged because they objected to his having allowed white students from a local private school to use the Amite County High School track facilities. In addition to his Title VII claim, Floyd alleged state law claims for breach of contract and bad faith termination, negligent and or intentional infliction of emotional distress, civil conspiracy, defamation, tortious interference with contract and trespass to chattels.[1]

---

1. Although the majority of his claims are based directly on his termination and events leading to his termination, the claim for tres-

pass to chattels is based on Floyd's allegation that following his termination, Russ entered his personal office and caused his personal

The following facts are undisputed. During September 2002, Superintendent Russ initiated an investigation into allegations of irregularities or improprieties concerning Floyd, then principal of Amite County High School. By letter dated October 11, 2002, Russ notified Floyd that he was suspended from duty pending the outcome of the investigation, and ultimately, on November 10, 2002, Superintendent Russ notified Floyd a decision had been made to terminate his employment. Russ cited a number of reasons for this decision, as follows:

1. improper handling of tobacco violations by students, including charging students a $75 fine, suspending such students until the fine was paid, and failing to account for monies received despite repeated requests by the superintendent's office;

2. inaccuracies, obliterations and additions in students' cumulative records;

3. removal of physical science courses from the curriculum without authorization;

4. holding track and field events on school property without explaining the details of such events to the Board;

5. failure to fulfill his duties as principal by spending an inordinate amount of time on activities unrelated to his contractual duties; and

6. failure to complete student schedules for the 2002–2003 school year in a timely fashion.

Russ indicated that pursuant to Floyd's request and in accordance with Mississippi Code Annotated § 37–9–59, a due process hearing would be held on the termination decision. The Amite County School Board appointed an independent hearing officer to conduct the hearing.

Shortly before the date on which the hearing was originally to occur, Floyd filed a petition in the Chancery Court of Amite County seeking to enjoin the hearing, contending that the Board could not be fair and impartial in hearing his case, and that he had been denied due process under both the Mississippi and United States constitutions because the Board had already voted to suspend him without pay, without first affording him a hearing, and had thus already prejudged the case against him. Although the chancery court found that the Board had violated his due process rights by failing to afford him a hearing prior to suspending him without pay, the chancery court denied his petition to enjoin the hearing, and the hearing went forward in late March 2003.[2]

At the hearing, which lasted four days, Floyd was represented by counsel and was allowed to present evidence and witnesses in his behalf. In June 2003, the hearing officer presented the School Board with the hearing transcripts, exhibits, and a 122–page summary of the evidence adduced at the hearing. On July 11, 2003, the School Board issued its opinion finding that Floyd's dismissal was a proper employment decision and was not contrary to law. On July 31, 2003, Floyd appealed the dismissal decision to the Amite County Chancery Court, as provided in Mississippi Code Annotated § 37–9–113.[3] On October 9, 2003, while his appeal was pending, Floyd filed a charge of discrimination with the Equal Employment Opportunity Commission. Not long thereafter, on October

effects, including awards and photographs, to be discarded or destroyed.

2. After the chancellor's ruling, Floyd sought to amend to add a claim for damages arising from the due process violation, but his motion was denied.

3. The statute provides that "[a]ny employee aggrieved by a final decision of the school board is entitled to judicial review thereof. . . ."

31, the chancellor issued a ruling in Floyd's favor on his appeal, reversing the Board's decision upon finding it was not supported by substantial evidence. The School Board appealed to the Mississippi Court of Appeals, and on February 6, 2004, while that appeal was pending, Floyd filed the present lawsuit. On motion by defendants, this action was stayed pending a decision by the court of appeals. *See Floyd v. Amite County School Dist.*, 376 F.Supp.2d 693 (S.D.Miss.2005). That court of appeals' decision, which came on November 15, 2005, reversed the chancellor, finding that there was sufficient evidence to support three of the claimed bases for Floyd's discharge (items numbered 1, 2 and 6 in Russ's letter). Floyd filed a petition for writ of certiorari to the Mississippi Supreme Court, which was denied on August 3, 2006.

■ Defendants have now moved for dismissal of all Floyd's claims against them based on the doctrine of res judicata. For res judicata to apply, defendants must demonstrate that the law of the state in which the prior judgment is rendered would give that judgment preclusive effect against the claims asserted in the federal action, *see Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096–97 (5th Cir.1995) (holding that in determining the preclusive effect of a state court judgment in a federal action, "federal courts must apply the law of the state from which the judgment emerged"), and that the party against whom preclusion is asserted had a full and fair opportunity in the state proceeding to litigate the claims, *see Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982) (requirement of a full and fair opportunity to litigate applies to both collateral estoppel and res judicata).

■ "Under Mississippi law, the doctrine of res judicata bars parties from litigating claims 'within the scope of the judgment' in a prior action." *Black v. North Panola School Dist.*, 461 F.3d 584, 588–589 (5th Cir.20006) (quoting *Anderson v. LaVere*, 895 So.2d 828, 832 (Miss.2004)). " 'This includes claims that were made or should have been made in the prior suit.' " *Id.* (quoting *Anderson* ). Mississippi law provides that "four identities must be present before the doctrine of res judicata will apply: (1) identity of subject matter; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality or character of a person against whom a claim is made." *Id.* (citations omitted). "If these four identities are present, the doctrine of res judicata will prevent the parties from relitigating all issues that were decided or could have been raised in the previous action." *Id.* (citing *Harrison v. Chandler–Sampson Ins., Inc.*, 891 So.2d 224, 232 (Miss.2005)).

In the court's opinion, at least as to plaintiff's Title VII claims, each of these identities is present.[4] In *Black*, the Fifth Circuit discussed Mississippi's "distinct but related" "cause of action" and "subject matter" identities. "Subject matter," the court wrote, refers to the "substance" of the lawsuit, *id.* (citing *Harrison*, 891 So.2d at 232–33), or "the underlying issue before the court, not the legal basis for recovery," *id.*, whereas " '[i]dentity of the cause of action exists when there is a commonality in the underlying facts and circumstances upon which a claim is asserted and relief is sought from the two actions,' " *id.* (quoting *City of Jackson v. Lakeland Lounge of Jackson, Inc.*, 688 So.2d 742, 749 (Miss. 1996)). "In other words, in the res judicata context, a cause of action is a group of operative facts that entitles a petitioner to

---

**4.** Floyd does not dispute that the third and fourth identities are present. His challenge is limited solely to the identities of "subject matter" and the "cause of action."

seek remedy in court." *Id.* The court in *Black* observed that "[w]hen making this notably difficult determination, Mississippi courts 'look[ ] past the legal bases asserted and [rely] more on the factual and transactional relationship between the original action and the subsequent action.' " *Id.* (quoting *Harrison,* 891 So.2d at 234). *See also Smith v. Safeco Ins. Co.,* 863 F.2d 403, 404 (5th Cir.1989) (finding that because the claims arose out of a common nucleus of operative fact, they comprised one transaction, and res judicata barred a second suit).

■ In this case, the substance of the state proceeding and this one, as respects Floyd's Title VII claim, is the same, namely, the propriety of Floyd's discharge. The court is of the opinion, moreover, that both proceedings involve the same cause of action.

Applying a transactional analysis in a factually similar setting, the court in *Welch v. Johnson,* 907 F.2d 714 (7th Cir.1990), concluded that a plaintiff's Title VII race discrimination claim was the same "cause of action" as her state discharge proceedings. In *Welch,* the plaintiff in the state administrative proceeding challenged the alleged bases for her discharge as being unfounded in fact, but like Floyd, she never claimed in that proceeding that her discharge was racially motivated. In her subsequently filed § 1983 federal lawsuit, however, she alleged she was discharged on account of her race and that the reasons given for her discharge were pretextual. The court concluded that both actions involved the same transaction, for "[i]n both actions, the focus was on proving either the legality or illegality of DCFS's (her employer's) conduct and treatment of [the plaintiff]." *Id.* at 721. The actions, the court wrote, were "merely different factual sides of the same coin." *Id.* The court explained:

Ms. Welch argues that these facts occurred for one reason (a discriminatory motive); the defendants argue that the same facts occurred for a different reason (just cause to dismiss Ms. Welch). The single factual situation out of which both sides arise is DCFS's conduct toward Ms. Welch that eventually culminated in her discharge. This conduct and the reasons underlying that conduct are relevant as either part of a claim or a *defense* in both the state and federal claims ... Thus, ... the state circuit court's judgment affirming the propriety of Ms. Welch's discharge would bar ... her federal suit....

*Id.* at 722.

A similar conclusion was reached by the Eleventh Circuit in *Carlisle v. Phenix City Board of Education,* 849 F.2d 1376 (11th Cir.1988). The court found that under Alabama law, which described the same cause of action requirement in terms of a "substantially the same evidence" test, a "single transaction" test, and a "logical relationship" test, the plaintiff's Title VII race discrimination claim was the same cause of action as his state transfer hearing even though he never alleged in the state proceedings that his transfer was racially motivated. The court reasoned that "[e]ven though evidence showing the truth of the stated reasons does not fully overlap with evidence showing the presence of illegitimate reasons, the state and federal claims are aspects of the same decision to transfer, and any illegitimate reasons would have been a logical rebuttal to legitimate reasons." *Id. See also Hughes v. Arveson,* 924 F.Supp. 735, 737 (M.D.La.1996) (finding that claims which formed basis of federal Title VII/ § 1981 suit arose of same transaction or occurrence as state termination proceedings). Consistent with this reasoning, which this court finds persuasive, the court concludes that Floyd's state discharge proceedings

and this Title VII action are the same cause of action for res judicata purposes.

■ However, the more vexing question here is whether Floyd had a "full and fair opportunity" to litigate his race discrimination claims in the state proceedings. Previously, in the context of its ruling granting defendants' motion to stay/abstain in this case, this court observed that courts in similar circumstances had held that the procedures prescribed by the School Employment Procedures Act afforded the plaintiffs an adequate opportunity to raise constitutional challenges. *Floyd v. Amite County School Dist.*, 376 F.Supp.2d at 696–697 (citing *Gammage v. West Jasper Bd. of Education*, Civil Action No. 4:97cv52LN (S.D.Miss. October 2, 1997), *Tobias v. Amite County Bd. of Educ.*, Civil Action No. 3:94cv297WS (S.D.Miss. July 25, 1994), and *Burks v. Graves*, Civil Action No. 3:92cv721PN (S.D.Miss. November 24, 1993)). The court then concluded that Floyd would have an adequate opportunity to raise his claim for declaratory relief in the state proceedings. Having further considered the issue in light of Floyd's specific allegations, it is not clear to the court that Floyd could have raised his race discrimination claim in the state proceeding.

Mississippi Code Annotated § 37–9–59, which is part of Mississippi's School Employment Procedures Act, provides that "[f]or incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause the superintendent of schools may dismiss or suspend any licensed employee in any school district." An employee so dismissed is entitled to a public hearing on the charges, either before the school board or before a hearing officer appointed by the board, as provided in § 37–9–111. In such a hearing, the burden is on the superintendent to prove by the preponderance of the evidence that there are adequate grounds for dismissal. *Amite County School Dist. v. Floyd*, 935 So.2d 1034, 1038 (Miss.Ct.App.2005) (citing *Harris v. Canton Separate Pub. Sch. Bd. of Educ.*, 655 So.2d 898, 902 (Miss.1995)). The employee is entitled "to present matters at the hearing relevant to the reasons given for the proposed nonreemployment determination and to the reasons the employee alleges to be the reasons for nonreemployment and to be represented by counsel at such a hearing." § 37–9–111(3). Section 37–9–113 allows an employee aggrieved by a school board's decision to seek judicial review in the chancery court of the judicial district in which the school district is located, though by statute, the chancery court's review is

> limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was:
>
> (a) Not supported by any substantial evidence;
>
> (b) Arbitrary or capricious; or
>
> (c) In violation of some statutory or constitutional right of the employee.

In response to defendants' motion, Floyd argues that res judicata does not apply here because the School Board "has limited authority which does not extend to resolving facts essential to [his] racial discrimination and state law claims," and because the Board "lacked the requisite judicial capacity to satisfy the due process requirement necessary for a proper determination of his racial discrimination and state court claims."

In *Miller v. Pascagoula Municipal Separate School System*, 263 F.3d 162, 2001 WL 803539 (5th Cir.2001), a discharged employee sought a hearing before the Pascagoula School Board regarding her termination. She maintained to the board that she was terminated because of her race

and sex. After an unfavorable result, she appealed to the chancery court which also found that her discrimination allegations were unfounded and that the school had fired her due to performance deficiencies. When she subsequently filed a Title VII action in federal court, the district court granted summary judgment based on res judicata. The Fifth Circuit affirmed, stating, "Because Miller's allegation of discrimination in her firing was assessed by a state administrative agency and reviewed by a competent state court, her Title VII suit in federal court premised upon these same set of facts is barred." *Id.* at 162 (citing *Kremer*, 456 U.S. 461, 466–67, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), and *University of Tennessee v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986)). In *Miller* the Fifth Circuit expressly rejected the argument advanced by Floyd that the school board was not a state administrative agency for res judicata purposes, and it implicitly recognized the authority of a school board in Mississippi to pass on claims of race discrimination.

If Floyd were challenging a decision by the superintendent to terminate his employment on the basis that her decision was racially motivated, this court, guided both by the language of § 37–9–111(3), by *Miller*, and by the cases cited in the court's previous opinion granting defendants' motion to abstain, *see supra*, would not hesitate to conclude that he could and should have presented this claim to the School Board, which would then have enabled him to also raise the issue on appeal through the judicial review process, had he chosen to pursue that avenue. In that circumstance, the court would also readily conclude that his failure to raise the issue would be no impediment to application of res judicata to preclude his subsequent Title VII action. *See Hughes v. Arveson*, 924 F.Supp. 735 (M.D.La.1996) (fact that plaintiff did not raise the issue of race

discrimination in administrative proceeding regarding termination of employment did not preclude application of res judicata where state law authorized plaintiff to raise her race discrimination claim in discharge proceeding before civil service commission); *see also Kremer*, 456 U.S. at 466, 102 S.Ct. at 1889 (stating that " '[a] party cannot escape the requirements of full faith and credit and res judicata by asserting its own failure to raise matters clearly within the scope of a prior proceeding' ") (citation omitted). Here, however, the issue is less straightforward, for it appears Floyd is not merely alleging that the superintendent was motivated by racial animus, but he also charges that the School Board's decision was racially motivated.

According to Floyd's complaint, the superintendent, acting in concert with the School Board, "engaged in a campaign to ... remove him as principal and track coach of [Amite County High School]." Floyd alleges that Superintendent Russ and the School Board commenced this campaign by first implementing a policy forbidding an administrator to serve in a dual capacity, thus forcing Floyd to choose between serving as principal and track coach; he chose to resign as track coach. He contends that then, in continuance of their effort to force him out of the position as principal, defendants, including the School Board, initiated false accusations against him which culminated in his initial suspension and ultimate discharge by the School Board. In the court's opinion, a claim that the School Board's actions and eventual decision to discharge him were racially discriminatory is not the kind of claim that he should have been expected to raise in the context of the hearing leading to the very decision he is challenging. The question is then whether he could have raised this claim on appeal to the chancery

court. The court is not persuaded that he could have done so.

The judicial review provided by § 37–9–113 does allow the chancellor to determine "if the action of the school board is unlawful for the reason that it was ... [i]n violation of some statutory or constitutional right of the employee." While the court is unaware of any case in which the specific claim of race discrimination was raised in such a manner, the language of the statute could theoretically permit an aggrieved employee to assert on appeal that the Board's decision was racially motivated. In fact, allegations of board bias infringing an employee's due process rights are often raised in appeals of this sort. The problem here is that the chancellor's review is explicitly "limited to a review of the record made before the school board or hearing officer;" and since Floyd did not assert to the School Board that the Board was discriminating against him for racial reasons, the court could not have considered his claim without going outside the administrative record, which it was not permitted to do. Practically, then, it does not seem that Floyd could have raised his claim of race discrimination by the Board on his appeal of the Board's decision to the chancery court.[5] Accordingly, the court cannot conclude that res judicata applies to bar his Title VII claim. *See Carlisle*, 849 F.2d at 1382 (concluding that procedural limitations on review of school board's transfer decision (which limited review to "the record of proceedings before the board") did not support assumption that plaintiff could have raised race discrimination claim for first time on appeal of school board's decision and finding, therefore, that summary judgment had been improperly entered for school district on basis of res judicata); *cf. Beiser v. Weyler*, 284

5. The cases previously cited by the court in support of the proposition that courts in "similar circumstances" had held that the SEPA provided sufficient opportunity for constitutional claims to be raised are not similar to an extent that would support application of their reasoning in the present context.

In *Tobias v. Amite County Board of Education*, Civil Action No. 3:97CV294WS (July 25, 1994), the plaintiff filed suit in federal court alleging a due process violation following the school board's vote to accept the superintendent's recommendation of nonrenewal. In the federal suit, the plaintiff alleged that the school board's proceedings violated his due process rights because the composition of the school board was unlawful. Although the plaintiff raised that issue before the board, the federal court saw no reason why the plaintiff, who was still before the chancery court at the time, could not seek to have the record on appeal expanded and supplemented to include evidence on the issue, or alternatively ask the chancellor to remand the case to the school board so that the plaintiff could develop his record on the issue. In the court's opinion, it would not be reasonable to conclude that Floyd is barred by res judicata from proceeding on his race discrimination claim because following the Board's adverse decision, he failed to ask the Board to allow him to develop a record on its discriminatory animus or to ask the chancery court to allow him to supplement the record on appeal notwithstanding the clear statutory directive that the chancellor limit his review to the record before the Board.

This case is also distinguishable from *Gammage v. West Jasper Board of Education*, Civil Action No. 4:97CV52(L)(N) (S.D.Miss. Oct. 2, 1997), in which the court, in granting the defendants' motion for *Younger* abstention, found that the plaintiff not only could but had raised in the state proceeding her claim that the defendants had discriminated against her on account of a disability in not renewing her employment. The chancellor was able to determine from the administrative record that the plaintiff had never advised defendants of any medical condition that would have prevented her from performing her job duties.

*Burks v. Graves*, Civil Action No. 3:92CV721PN (S.D.Miss. Nov. 20, 1993), the other case cited by the court in its previous opinion, really does not provide sufficient facts for an informed determination as to whether it is analogous to the present case for purposes of res judicata analysis.

F.3d 665, 673 (5th Cir.2002) ("If a litigant, as a matter of law, has no right to appellate review, then he has not had a full and fair opportunity to litigate and the issue is not precluded.") (citing *Restatement (Second) of Judgments* § 28 (1980)).

Defendants argue, alternatively, that Floyd's Title VII claim is barred by collateral estoppel. In the court's opinion, however, collateral estoppel is clearly inapplicable for any of a number of reasons. Under Mississippi law, the elements of collateral estoppel are: " '(1) the issue involved in the second suit was identical to the one involved in the previous suit; (2) the issue was actually litigated in the prior action; and, (3) the resolution of the issue was necessary to the prior judgment.' " *Evans v. Sharpley*, 607 So.2d 1210, 1213 (Miss.1992) (citations omitted). As Floyd did not raise the issue of whether his termination was racially motivated, the issue therefore was not "actually litigated," and thus this fundamental requisite for applicability of collateral estoppel is missing. *See Dunaway v. W.H. Hopper & Assocs., Inc.*, 422 So.2d 749, 751 (Miss. 1982) (stating that "collateral estoppel, unlike the broader doctrine of res judicata, applies only to questions actually litigated in a prior suit, and not to questions which might have been litigated"); *see also Allen v. McCurry*, 449 U.S. 90, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980) (stating that "[c]ollateral estoppel does not apply where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court."). Moreover, while the court of appeals did conclude that there were legitimate reasons for discharging Floyd, that does not necessarily foreclose Floyd's Title VII claim because a jury could find that these reasons were pretext, and that Floyd would not have been terminated had it not been for illegitimate racial reasons. *See Carlisle*, 849 F.2d at 1379 (state court's finding that board had legitimate reasons for transferring school principal would collaterally estop him from asserting there were no legitimate reasons for his transfer but did not estop him from asserting that there were illegitimate racial reasons in addition: "The absence of racial bias on the part of the board was not a finding necessary to the judgment and was not made in the course of the state proceedings."); *Tolefree v. Kansas City, Missouri*, 980 F.2d 1171, 1174 (8th Cir.1992) (holding that a city personnel board determination that a termination for bad performance was "justified" did not preclude plaintiff from pursuing a Title VII "mixed-motive" claim under *Price Waterhouse* ).

For the reasons given, the court concludes that defendants have failed to establish that plaintiff's Title VII claim is barred by res judicata. As for Floyd's state law claims, and whether any of them would be barred, the court notes that defendants have not undertaken to separately demonstrate that these claims, or any of them, would necessarily be barred either by collateral estoppel or res judicata. Rather, they have lumped them all together and declared that all Floyd's claims are barred either by collateral estoppel or res judicata. The court does recognize that one or more of these claims may be, or is even likely barred; but is not apparent that all are. For example, the court fails to perceive a basis for concluding that Floyd's claim against Russ for trespass to his personal property would be barred. As defendants have not done so, this court declines to undertake the task on its own of evaluating each claim separately and instead will deny their motion for summary judgment on these claims as well.

Based on the foregoing, it is ordered that defendants' motion for summary judgment is denied.

SO ORDERED.