Juanita Dunson was employed by the Chambers County Board of Education (Board) as a tenured teacher. On May 28, 1992, the Board sent, by certified mail, a notice to Dunson of its intent to terminate her from her position at Five Points Elementary School, where she was teaching the second grade. The Board scheduled a hearing on the proposed termination for June 25, 1992, and informed Dunson of her right to appear and answer the charges against her.
By a letter to the Board dated June 17, 1992, and received June 19, 1992, Dunson notified the Board of her intent to contest her termination. Thereafter, by consent of the parties, the hearing was postponed to July 15, 1992. After several hours of testimony were presented on July 15, the Board continued the hearing until August 12, 1992, when the hearing was concluded. At the conclusion of the hearing, the Board voted to terminate Dunson's employment. Dunson then filed an appeal with the Alabama Teacher Tenure Commission (Commission), which apparently affirmed the Board's decision to terminate Dunson.
On January 8, 1993, Dunson filed in the Chambers County Circuit Court a petition for a writ of mandamus pursuant to § 16-24-38, *Page 997 
Ala. Code 1975, seeking judicial review of the Commission's determination. On March 25, 1993, the Commission and its individual members filed a motion to dismiss, based in part on Dunson's failure to file a verified petition in compliance with § 6-6-640(a), Ala. Code 1975. On April 13, 1993, the trial court entered an order dismissing the case for want of prosecution, based on the failure of Dunson and her attorneys to attend a pretrial conference and on Dunson's failure to file a verified petition. On April 29, 1993, Dunson filed a verified petition and a post-judgment motion requesting the trial court to reinstate the action. The trial court granted Dunson's post-judgment motion on July 9, 1993, and the case was reinstated.
On July 27, 1993, Dunson filed a motion for recusal, contending that the trial judge's comments and conduct demonstrated a personal bias and prejudice against her attorneys, the Alabama Education Association and its attorneys, and her case in general. She also contended that the trial judge had engaged in ex parte communications with the Commission's counsel. On August 5, 1993, the trial court denied Dunson's motion for recusal. Following a hearing on Dunson's petition, at which attorneys for both parties presented oral arguments, Dunson filed a second motion for recusal, based on essentially the same grounds as her first motion for recusal, as well as on the trial judge's conduct during the hearing. On December 9, 1993, the trial court entered an order inviting the parties to submit affidavits in support of, or in opposition to, the motions for recusal. On December 21, 1993, the Commission filed three affidavits in opposition to the motions for recusal. Dunson chose not to file any affidavits, relying instead on the transcript of the hearing.
On January 19, 1994, the trial court entered an order on Dunson's second motion for recusal and on her petition for a writ of mandamus seeking review of the termination proceedings. The trial judge declined to recuse himself, stating that he was not biased or prejudiced against Dunson and that his comments and conduct toward her attorney did not arise from bias or prejudice. The trial court then affirmed the action of the Commission in upholding the Board's termination of Dunson's employment, stating that the evidence amply supported the findings of both the Board and the Commission.
Dunson appeals to this court, contending: (1) that the trial court erred in denying her motions for recusal; (2) that the trial court erred in ruling that the Board's notice of intent to terminate her employment was adequate and did not violate her procedural due process rights; and (3) that the trial court erred in ruling that there was sufficient evidence to sustain the Board's actions.
Dunson first contends that the trial court erred in denying her motions for recusal. Our supreme court has held that the proper method for seeking review of a ruling on a motion to recuse is to petition for a writ of mandamus. Ex parte Melof,553 So.2d 554 (Ala. 1989). Where, as in this case, a party fails to petition for a writ of mandamus, the issue has not been properly raised, and this court will not consider it.Ashbee v. Ashbee, 431 So.2d 1312 (Ala.Civ.App. 1983); seealso D.H. v. State Dep't of Human Resources, 600 So.2d 273
(Ala.Civ.App. 1992).
We now address Dunson's second and third contentions, which have to do with the actions taken by the Board. In doing so, we note that our scope of appellate review is the same as that of the circuit court. Alabama State Tenure Comm'n v. ConecuhCounty Bd. of Educ., 495 So.2d 1105 (Ala.Civ.App. 1985),cert. quashed, 495 So.2d 1108 (Ala. 1986). The Commission's decision will not be reversed unless the Commission's procedural requirements were not properly complied with or unless its judgment is contrary to the preponderance and weight of the evidence so as to be unjust. County Bd. of Educ. ofShelby County v. Alabama State Tenure Comm'n, 392 So.2d 842
(Ala.Civ.App. 1980), cert. denied, 392 So.2d 844 (Ala. 1981).
Dunson contends that the trial court erred in ruling that the Board's notice of intent to terminate her employment was adequate and did not violate her procedural due process rights. Section 16-24-9, Ala. Code 1975, provides, in pertinent part: "The employing board of education shall give notice in writing to the teacher stating in detail the *Page 998 
reasons for the proposed cancellation. . . ." This court has held that the notice provided by an employing board must be more specific than a mere recitation of the grounds for termination provided in § 16-24-8, Ala. Code 1975. Gardner v.Alabama State Tenure Comm'n, 553 So.2d 606 (Ala.Civ.App. 1989).
In the notice sent to Dunson, the Board stated the following reasons for proposing the termination of Dunson's employment:
 "Please take notice that the Board . . . proposed to terminate your employment on the grounds of incompetency, neglect of duty, and other good and just cause. The specific reasons supporting the grounds are as follows: you failed to keep a proper level of discipline in your classroom; you failed to participate when Judy LaFollette [the curriculum supervisor for the Chambers County Board of Education] came to your elementary classroom to demonstrate proper teaching methods; you failed to properly administer and monitor the Stanford Achievement Test; you failed to properly administer and monitor the Alabama Integrated Reading and Writing Assessment for Grade Two; you failed to give lesson plans for Chapter I students to your Chapter I teacher aide; you failed to carry out the Alabama Course of Study requirements for [the] teaching of writing skills; and you failed to follow state-mandated time allotments for instruction."
Dunson argues that the notice that the Board sent to her includes "no reference, whatsoever, to the fact that students' test scores would be presented at the termination hearing for the purpose of establishing that Juanita Dunson was incompetent." She further argues that she "was not given notice that classroom discipline problems dating back to 1988 and 1989 would be used against her at the termination hearing." However, the Board was not required to provide Dunson with a detailed statement of the evidence that would be presented against her; it was only required to provide her with a detailed statement of the reasons for terminating her employment. Gardner, supra.
We hold that the Board adequately complied with the statutory procedure for giving notice. § 16-24-9. Therefore, we conclude that the trial court did not err in ruling that the notice sent to her was adequate and did not violate her procedural due process rights. County Bd. of Educ. of Shelby County, supra.
Dunson also contends that the trial court erred in ruling that there was sufficient evidence to sustain the Board's cancellation of her contract. Section 16-24-8, Ala. Code 1975, provides the following grounds for canceling the contract of a tenured teacher: "incompetency, insubordination, neglect of duty, immorality, justifiable decrease in the number of teaching positions or other good and just cause."
In its letter notifying Dunson that it proposed to terminate her employment, the Board charged that Dunson had "failed to keep a proper level of discipline in [the] classroom." The record of Dunson's employment termination hearing reveals that Dunson frequently was absent from her classroom. Doris Pledger, who served as a Chapter I[1] teacher's aide for Dunson from September 1991 to February 1992, testified that Dunson "left the room more than she was in it." Dunson's unsupervised second-graders often disrupted other nearby classes with noise. Ethel Heard, the librarian at Five Points, and Evangeline Sanders, a third-grade teacher at Five Points, testified that Dunson's class was the noisiest they had witnessed in 34 and 17 years, respectively.
The record further reveals that when Dunson was present in the classroom, she engaged in frequent outbursts of loud and abusive shouting at the students. Pledger testified that on one occasion, Dunson struck the face of a female student with her fist. Pledger testified that another student sat crying in the hall every day for six weeks after Dunson put him there. Another of Dunson's former Chapter I teacher's aides, Debra Slay, testified that on one occasion, Dunson had become so angry with the class that she had thrown everything off the top of her desk into the hall; on other occasions, Dunson's temper was such that Slay sought the help of *Page 999 
the school secretary to calm Dunson down. A third former Chapter I teacher's aide, June Griffin, testified that when Dunson did not believe that the children were performing as they should, she publicly accused them of having parents that drank all night or told them that they did not have enough sense to learn.
Carol Wheeler, who taught kindergarten at Five Points during the 1990-91 school year, also testified that Dunson did not properly supervise her students. Wheeler testified that on one occasion just after lunch when her kindergartners were taking a nap, some of Dunson's students were running and sliding into a life-size picture of a clown that Wheeler had attached to her door. When Wheeler scolded Dunson's students for being so noisy and disruptive, Dunson "flew into [Wheeler's] room and called [her] a [derogatory name]." Dunson then told Wheeler's students that Wheeler "was going to put needles and pins in them and put demons in them." Wheeler testified that by this time, several of her students were in tears. She asked Dunson to leave, and Dunson said "hit me; you make me." Wheeler testified that, as she walked down the hall toward the library to get Ethel Heard's assistance, Dunson followed her and kicked the cast protecting her broken ankle. Wheeler further testified that Dunson continued to taunt her when she entered the library. Heard testified that when she realized that Dunson and Wheeler were having an argument, she told Wheeler to go back to her classroom. Heard testified that Wheeler then walked quickly out the door with Dunson following her and chanting, "you're chicken, you're just chicken, chicken, and you can go dig up your dead daddy if you want to." Wheeler testified that while she was on her way back to her classroom, Dunson stepped on the back of her shoe and pulled it off. Wheeler testified that she walked into her classroom and locked the door. Both Heard and Wheeler reported Dunson's misconduct to the school's principal.
Doris Pledger testified that Dunson had threatened the students that she was going to call the police, the sheriff, or the local juvenile court judge, and told them "I'm going to beat you up." June Griffin also testified that Dunson had threatened to call the sheriff or the police to come and pick up misbehaving students. George Fannings, whose seven-year-old son was a student in Dunson's class, testified that these threats terrified his son, who came home crying and did not want to return to school.
Leonard Riley, the Chambers County Superintendent of Education, testified that Dunson had referred 21 of her approximately 26 students to the principal for disciplinary reasons a total of 153 times during the course of the 1991-92 school term. Riley testified that the number of Dunson's referrals was unacceptably high for second-graders. Judy Lowe, the Board's testing coordinator, attendance supervisor, and textbook director, who observed Dunson's behavior on several occasions throughout the second semester of the 1991-92 school term, testified that on one of her visits to Dunson's classroom, Dunson screamed at two students for talking and ordered them to the principal's office, but that they did not go. Lowe testified that Dunson's reasons for sending the students to the office were often trivial, such as talking, "acting up," or even asking for permission to go to the bathroom. Lowe concluded that the number of Dunson's disciplinary referrals indicated that she was unable to maintain control in her classroom and that she had lost the respect of her students.
The Board also notified Dunson that she had "failed to give lesson plans for Chapter I students to [her] Chapter I teacher aide." The Chambers County "Guidelines for the Chapter I Tutor/Aide Program" provide that "[t]eachers should provide Chapter I Tutor/Aides with weekly and daily lesson plans." Pledger testified that she gave Dunson a copy of the guidelines at the beginning of the 1991-92 school year. However, she testified that Dunson had failed to give her any lesson plans. Griffin also testified that Dunson had failed to give her any lesson plans. Debra Slay testified that when Dunson did provide her with a lesson plan, it was usually at the end of the week in which the plan was to have been implemented. Although Superintendent Riley had explicitly ordered Dunson, both in conference on February *Page 1000 
25, 1992, and in writing by a letter dated February 27, 1992, to provide her Chapter I teacher's aide with lesson plans for each day, there were still weeks in which Dunson did not provide her aide with any lesson plans.
The Board further notified Dunson that she had "failed to follow state-mandated time allotments for instruction." Judy Lowe testified that according to strict state mandates, second grade students are to have 90 minutes per day of language arts, 90 minutes per day of reading, 60 minutes per day of mathematics, and 30 minutes per day of social studies; she could not remember the time allotted for science. However, Dunson's lesson plans indicate that she failed to follow the state-mandated time allotments. For example, no reading was taught between September 18 and October 4, 1992; during the week of February 24-28, 1992, Dunson taught social studies on only one day, using the mandated time to teach creative writing instead; during the week before the science fair, March 9-13, 1992, Dunson listed the previous week's reading and math assignments because the students were working on science and social studies projects; and on May 4, 1992, the day before the Alabama Integrated Writing Assessment for Grade Two was to be administered, Dunson did not teach reading, but used the time to help her students prepare for the writing assessment. On one occasion while Lowe and Judy LaFollette, the Board's curriculum supervisor, were observing Dunson's classroom, Dunson told them that because her Chapter I teacher's aide had been out for several weeks, the Chapter I students had not had reading assignments during that time. In addition, various witnesses stated that during instructional time they had observed Dunson's students eating, talking, mopping, watering flowers, writing sentences as punishment, or playing outside.
The Board notified Dunson that she had "failed to carry out the Alabama Course of Study requirements for [the] teaching of writing skills." The Alabama Course of Study language arts requirements for second-graders provide as distinct instructional objectives that the students will "develop composing skills" and that they will "develop manuscript handwriting skills." One of the composing skills that Dunson was to teach was to have the students "keep a journal or diary of items of personal interest." However, in teaching her class, Dunson incorrectly defined the word "journal" as "a picture with a story behind it." This, Superintendent Riley testified, indicated that Dunson had no comprehension of what a writing journal was. Also, the record contains what Dunson said were 49 creative writing samples that she had collected from her students during the 1991-92 school term. However we note, as several witnesses pointed out, that Dunson's "creative writing samples" are merely renditions of what were obviously pattern sentences for the students to copy. This fact, Riley testified, indicated that Dunson did not understand the difference between creative writing and handwriting. He further testified that Dunson refused to give up the writing samples until she was threatened with termination of her employment for insubordination.
The Board notified Dunson that she had "failed to properly administer and monitor" both the Stanford Achievement Test and the Alabama Integrated Reading and Writing Assessment for Grade Two. On April 14, 15, and 16, 1992, Lowe and LaFollette were sent to observe Dunson's administration and monitoring of the Stanford Achievement Test. LaFollette testified that, before the test, Dunson took 20 minutes to deliver the oral instructions, which were supposed to take only 5 minutes. Further, LaFollette testified that although the test administrator was required to demonstrate her instructions by holding up the booklet to refer the students to specific areas of the test, Dunson failed to do so. LaFollette and Lowe both testified that Dunson talked constantly during the test, saying things such as "do your best" and, at one point, interrupting the students to ask them if their pencils needed sharpening. The women also testified that Dunson prompted some students who were answering incorrectly by saying things such as "you're not thinking." Lowe testified that Dunson failed to adhere to the time limits prescribed by the Stanford Achievement Test. The women noted that Dunson continued *Page 1001 
her improper administration and monitoring of the test even after they corrected her improprieties.
On May 5, 1992, Lowe and LaFollette were sent to observe Dunson's administration and monitoring of the Alabama Integrated Reading and Writing Assessment for Grade Two. Lowe testified that Dunson also failed to adhere to the prescribed time limits for this test.
The Board further notified Dunson that she had "failed to participate when Judy LaFollette came to [Dunson's] elementary classroom to demonstrate proper teaching methods." Prompted by the struggles Lowe had observed Dunson having in conducting her class during the second semester of the 1991-92 school term, Superintendent Riley approved Lowe's suggestion that she and LaFollette give Dunson a demonstration of how to handle groups of students at different learning levels at the same time. Lowe testified that when she and LaFollette arrived to give the demonstration they explained to Dunson what they were going to do. Lowe testified that it was something the three of them had previously discussed. The two women testified that while LaFollette was giving the demonstration, Dunson left the room three times. Lowe testified that each time Dunson left the room, she stayed out for approximately five minutes. Lowe further testified that when Dunson left the room for a third time, she went to see if there was a problem and found Dunson in the hall talking with another teacher. When Dunson returned from her visit, she went to the back of the room and began to shuffle and/or grade papers. Then, when Lowe walked back to ask Dunson to watch the demonstration, Dunson became irate and raised her voice. Dunson caused such a commotion that the children had to be removed from the room, and Lowe and LaFollette had to call Superintendent Riley to have him meet with them and Dunson and the school principal to work out the problem. LaFollette testified that after the demonstration Dunson made no effort to change her teaching methods.
The record indicates that the Board heard sufficient evidence to justify the cancellation of Dunson's contract on the statutory grounds provided by § 16-24-8. County Bd. of Educ. ofShelby County, supra. Therefore, we conclude that the trial court did not err in ruling that there was sufficient evidence to sustain the Board's cancellation of her contract. Id. Based on the foregoing, the trial court's judgment is due to be affirmed.
AFFIRMED.
THIGPEN and YATES, JJ., concur.
[1] These are teacher aides provided for by the ElementarySecondary Education Act of 1965, as amended and codified at Title 1, Chapter 1, 20 U.S.C. § 2701, et seq.