# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00098-SCT

*ANNYE C. ANDERSON, AS PERSONAL*
*REPRESENTATIVE AND LEGATEE OF THE*
*ESTATE OF CARRIE H. THOMPSON, DECEASED;*
*AND ROBERT M. HARRIS, LEGATEE OF THE*
*ESTATE OF CARRIE H. THOMPSON, DECEASED*

*v.*

*STEPHEN C. LAVERE; DELTA HAZE*
*CORPORATION, A NEVADA CORPORATION; AND*
*SONY MUSIC ENTERTAINMENT, INC., A*
*DELAWARE CORPORATION*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 12/07/2001 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES W. CRAIG |
| | REUBEN V. ANDERSON |
| | DEBRA M. BROWN |
| ATTORNEYS FOR APPELLEES: | RICHARD A. OAKES |
| | ANTHONY KORNARENS |
| | W. SCOTT WELCH, III |
| | ANITA K. MODAK-TRURAN |
| | JAMES W. KITCHENS |
| | MARGARET P. ELLIS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 12/09/2004 |
| MOTION FOR REHEARING FILED: | 10/30/2003 |
| MANDATE ISSUED: | |

EN BANC.

COBB, PRESIDING JUSTICE, FOR THE COURT:

¶1.     The motion for rehearing is granted. The original opinion is withdrawn, and this opinion is substituted therefor.

¶2.     Litigation concerning the estate of legendary blues artist Robert Johnson (Johnson) has been ongoing for fifteen years. The first suit was commenced in June, 1989, in the Chancery Court of Leflore County, when Annye Anderson[1] (Anderson) filed the initial petition to open the Johnson estate.[2] See *In re Estate of Johnson* 705 So.2d 819 (Miss. 1996). Anderson was initially appointed administratrix of the estate, but Leflore County clerk Willis Brumfield was subsequently substituted as administrator.[3] In 1992, Brumfield filed a petition to determine the heirs of Johnson. Claud Johnson (Claud) filed a formal entry of appearance, asserting his claim as the biological son of Robert Johnson, and thus the sole heir to the Johnson estate. In September of 1992, the trial court refused Claud's claim as time barred and "provisionally ruled that Robert M. Harris and Annie [sic] C. Anderson had met the burden of proof that they were the heirs of Carrie Dodds Thompson and that Carrie was the only surviving sister of

---

[1] Annye Anderson is the half sister and a beneficiary of the will of Carrie Thompson. Carrie Thompson was the half sister of Robert Johnson and was presumed to be the sole heir of the estate of Robert Johnson from 1938 until 1998. Anderson and Robert Johnson were not blood relatives.

[2] Although Johnson died in 1938 at the age of 27, his estate was essentially worthless until royalties were produced from the sale of "Robert Johnson, The Complete Recordings."

[3] The chancellor removed Anderson and appointed Brumfield in order to have an independent administrator who did not present a potential claim to the Johnson Estate.

Robert L. Johnson, deceased."[4] On appeal, this Court reversed and remanded, stating that Claud was entitled to prosecute his claim. *Id.*

¶3. On remand, the chancery court held a hearing for the purpose of determining if Claud was the natural son of Johnson (the heirship proceeding), and entered a final judgment in October, 1998, stating that Claud was the biological son of Johnson and sole heir to the Johnson estate. Anderson and Harris appealed the chancery court ruling, which this Court affirmed June 15, 2000. *In re Estate of Johnson*, 767 So.2d 181 (Miss. 2000).

¶4. Prior to this Court's affirmance of the heirship judgment, a second lawsuit was filed. In the second lawsuit, which is presently before this Court, Anderson, as personal representative and legatee of the Thompson estate, and Harris, as legatee of the Thompson estate, filed suit against Claud Johnson, Stephen C. LaVere (LaVere), Delta Haze Corporation (Delta) and Sony Music Entertainment, Inc. (Sony) in the Circuit Court of the First Judicial District of Hinds County,[5] Mississippi on March 21, 2000. The complaint alleged, among other things, conversion, fraud, misrepresentation and breach of contract, concerning a 1974

---

[4] This quote is from the chancery court opinion dated July 8, 1988 describing the prior ruling, which is not in the record before us.

[5] The case was transferred from the Circuit Court of Hinds County to the Circuit Court of Leflore County. The trial court determined that Leflore and Copiah Counties were the only proper venues in Mississippi. Anderson and Harris chose the Circuit Court of Leflore County. Although Anderson disputes venue, this is meritless. Claud was the only resident of Mississippi, residing in Copiah County, Mississippi. Anderson was a resident of Massachusetts. Harris was a resident of Maryland. LaVere was a resident of California. Delta was a foreign corporation organized under the laws of Nevada. Sony was a foreign corporation organized under the laws of Delaware. The Estate of Robert L. Johnson (Johnson Estate) was administered in Leflore County, Mississippi. The only connection the case has with Hinds County is that a CD was purchased there.

contract between Thompson and LaVere, in which, among other things, Thompson assigned to LaVere the right to use certain photographs of Johnson for commercial use in exchange for a percentage of the royalties earned from the use of the photos in exploiting Robert Johnson's work.

¶5. LaVere, Delta and Sony moved for dismissal or, in the alternative, for summary judgment based on, among other things, the defense of res judicata. The Leflore County Circuit Court found that the issue was barred due to res judicata, because Anderson and Harris "could have petitioned the Chancery Court to make a determination that the copyrights to the photographs were rightfully theirs" during the estate administration. The trial court granted the motion to dismiss the complaint as to fewer than all the defendants on behalf of LaVere, Delta and Sony, and entered a final judgment pursuant to M.R.C.P. 54(b). Anderson and Harris now appeal to this Court.

¶6. In addition to the contract questions, at the heart of this suit is the question of who owns the only two photos of Johnson known to exist, the ones used in the promotion of the "Complete Recordings,"and which are now producing royalties. In her complaint, Anderson asserted that Carrie Thompson, Robert Johnson's half-sister, had collected photographs of Johnson and their family while they were growing up, which she preserved as a record of her family's history, and that they were Thompson's personal property. In his answer, Claud, as heir to the Johnson estate stated that he was without sufficient information to admit or deny that claim. LaVere, in his answer, acknowledged that Carrie Thompson had been in possession of the photographs, but offered no rebuttal to Anderson's claim of ownership. Additionally,

4

**there is no evidence in the record before us showing that this claim has ever been challenged**. It is apparent that this claim has never been litigated in a suit between the parties, nor was it required to be. The doctrine of res judicata may not now be used to preclude its litigation. Thus we reverse the trial court and remand this case for trial on the merits.

## FACTS

¶7. Robert Johnson died intestate on August 16, 1938. Johnson was penniless when he died, and thus no one opened his estate. The heir presumptive was Johnson's only living sibling, his half-sister, Carrie Thompson. Over 35 years later, in 1974, a music historian named Steve LaVere, who had done extensive research into the life of Robert Johnson, contacted Thompson about commercially promoting the music of Robert Johnson. LaVere and Thompson subsequently entered into a contract by which LaVere recognized Thompson as a source of information about Johnson, and the "owner of certain items relating to Johnson such as photographs, etc." Thompson recognized LaVere as an expert in utilizing such items for commercial purposes, and she assigned to LaVere the rights to photographs of Johnson and other memorabilia she possessed and copyrights to Johnson's works in exchange for 50% of any royalties to be earned by LaVere from their use. Relying on the contract with Thompson, LaVere entered into an agreement with CBS Records, assigning his rights to CBS to be used in conjunction with the release of Johnson's work to the public.

¶8. In 1980, after no commercial release of Johnson's works had occurred, Thompson notified LaVere that she was rescinding the contract with him because she felt that he had failed to perform his obligations under their agreement. Being advised by counsel that

5

Thompson could not unilaterally rescind the contract, LaVere continued his efforts to exploit the Johnson materials. Thompson died in 1983, leaving her estate (including any rights she had to the Johnson estate) to her half-sister Anderson and her grandson, Harris. Anderson opened the Johnson estate in June of 1989 and was appointed administratrix. In 1990, CBS released Johnson's record collection, utilizing the photographs and biographical information obtained from Thompson via LaVere. In 1991, the chancery court substituted Brumfield for Anderson as administrator and authorized LaVere to deposit royalty funds into the Johnson estate, but made no findings on any ownership or contract issues.[6] Subsequently, Brumfield signed a contract with LaVere, which was almost identical to the contract between Thompson and LaVere to exploit Johnson's works for profit. The following year, Brumfield filed a petition to determine heirs of Robert Johnson, to which Claud was eventually adjudicated to be the sole heir.

## ANALYSIS

¶9. The standard for reviewing the granting or denying of summary judgment is set forth in Miss. R. Civ. P. 56. We conduct a de novo review of orders granting or denying summary judgment and examine all the evidentiary matters before us -- admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The burden of demonstrating that no genuine

---

[6] The May 31, 1991, Order Authorizing Payment of Royalties to The Administrator reads in part "[a]ccordingly, the Court hereby orders that the funds tendered by Steve LaVere, both now and hereafter, **until further orders of the Court**, are received by the Administrator **without in any manner admitting or denying the validity of the [Thompson] contract and without determination of any rights or obligations the Estate of Robert L. Johnson may have arising out of the works of the late Robert L. Johnson.**" (Emphasis added).

issue of fact exists is on the moving party. That is, the non-movant is given the benefit of the doubt. *McCullough v. Cook*, 679 So.2d 627, 630 (Miss. 1996). If, in this view, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party's favor. The party opposing the motion must be diligent and may not rest upon allegations or denials in the pleadings but must by allegations or denials set forth specific facts showing that there are indeed genuine issues for trial. *Richmond v. Benchmark Constr. Corp.*, 692 So.2d 60, 61 (Miss. 1997). A motion for summary judgment is not a substitute for trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried. *Dennis v. Searle*, 457 So.2d 941, 944 (Miss. 1984).

¶10. The Leflore County Circuit Court granted summary judgment upon defendants' argument that plaintiffs' claims are precluded by the doctrine of res judicata. Res judicata is a doctrine of claim preclusion. *McIntosh v. Johnson*, 649 So.2d 190, 193 (Miss. 1995), *overruled on other grounds*, *Norman v. Bucklew*, 684 So.2d 1246 (Miss. 1996). It precludes parties from litigating in a second action claims within the scope of the judgment of the first action. This includes claims which "were made or should have been made, in the prior suit." *Id.* The burden of proving res judicata as a defense is on the defendant. *Pate v. Evans*, 97 So.2d 737, 739 (1957). In *Dunaway v. W.H. Hopper & Associates, Inc*, 422 So.2d 749, 751 (Miss. 1982), we said:

> Generally, four identities must be present before the doctrine of res judicata
> will be applicable: (1) identity of the subject matter of the action, (2) identity

7

of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made. *Mississippi Employment Security Commission v. Georgia-Pacific Corp.*, 394 So.2d 299 (Miss.1981); *Cowan v. Gulf City Fisheries, Inc.*, 381 So.2d 158 (Miss.1980); *Standard Oil Co. v. Howell*, 360 So.2d 1200 (Miss.1978). If these four identities are present, the parties will be prevented from relitigating all issues tried in the prior lawsuit, as well as all matters which should have been litigated and decided in the prior suit. *Pray v. Hewitt*, 254 Miss. 20, 179 So.2d 842 (1965); *Golden v. Golden*, 246 Miss. 562, 151 So.2d 598 (1963). In other words, "the doctrine of res judicata bars litigation in a second lawsuit on the same cause of action 'of all grounds for, or defenses to, recovery that were available to the parties [in the first action], regardless of whether they were asserted or determined in the prior proceeding.'" *Key v. Wise*, 629 F.2d 1049, 1063 (5th Cir.1980), reh. denied, 645 F.2d 72 (5th Cir.1981), cert. denied, 454 U.S. 1103, 102 S.Ct. 682, 70 L.Ed.2d 647 (1981) (quoting from *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)).

In addition to these four identities, res judicata applies only to judgments which are final, *In re T.L.C.*, 566 So.2d 691, 697 (Miss. 1990). The prior judgment must also have been on the merits. *Bowen v. Bowen*, 688 So.2d 1374, 1384 (Miss. 1997).

¶11. In holding that the present action is barred by the doctrine of res judicata, the circuit court made several findings, including that Carrie Thompson had collected pictures of Robert Johnson prior to Johnson's death, and that Thompson entered into an agreement with LaVere in which she transferred her rights in the photos and in Johnson's musical works for half of the royalties derived from LaVere's efforts. The circuit court also found that the agreement stated that in the event there are other heirs of Robert Johnson, Thompson would be responsible for payment of the funds she received under the agreement to those persons. The circuit court failed to recognize that the Thompson-LaVere contract specified that part of the property was owned by Thompson personally and part was owned by Thompson as heir to the Johnson estate.

8

Paragraph one described items that Thompson claimed to own herself and included the photos, and Paragraph three described items that were owned by her as the sole heir of the Johnson estate and included Johnson's works. Paragraph five, which stated that royalties would go to other heirs, if found, only pertained to those items specified in Paragraph three. Thus it appears that the circuit court never considered the possibility that the photos might not be the property of the Johnson estate.

¶12. Additionally, the circuit court found that the four identities required by res judicata were met in this case. We do not agree.

*Identity of the Subject Matter*

¶13. The circuit court erroneously found that "[t]he Leflore County chancery court determined that the copyright and the right to royalties generated from two photographs of Robert Johnson that are the basis of this cause of action belonged to Claud Johnson." In fact, the chancery court made no finding concerning the copyright and the right to royalties generated from the two photos. The subject matter of the chancery court action was the administration of the Johnson estate, including an heirship proceeding to determine the heirs of Johnson. The claim of ownership of the photos was clearly not litigated during the chancery proceedings. What the chancery court did find in its October 15, 1998, heirship proceeding judgment was that Claud Johnson was the biological son and the sole heir at law of Robert Johnson. Subsequently, when the estate was closed, Paragraph (6) of the Order of Final Discharge, dated March 22, 1999, stated:

9

All contract rights **of the estate** are hereby declared to be vested in Claud L. Johnson, the biological son and sole heir at law of Robert L. Johnson, Deceased, including but not limited to those documents described in Exhibit A which documents shall be delievered [sic] to said Claud L. Johson [sic] within a reasonable time after the entering of this Order.

(Emphasis added). Exhibit A contained the following list:

1.   Copies of all income source statements;
2.   Copies of all licenses, including but not limited to the mechanical licenses and synchronization licenses;
3.   Copies of all statements from record companies;
4.   Copies of all past and present contracts entered into on behalf of the estate;
5.   Copies of all print agreements;
6.   Copies of all royalty statements received, including but not limited to mechanical royalties and artist royalties;
7.   Copies of all agreements pertaining to the use and control of the master recordings;
8.   Copies of all agreements, including contracts, with Bob Eagle and/or Eagle & Partners;
9.   Copies of all sub-publishing agreements;
10.  Copies of all statements from the inception of the sub-publishing agreements;
11.  Copies of all BMI statements, including but not limited to those pertaining to the writer and publisher rights;

**Exhibit A does not mention the photographs**.  There was no court finding regarding the specific contract rights of the estate.  There is nothing in the record before us that shows that there has ever been a determination of ownership of the photos.  Anderson and Harris claim that they presumed that they were Johnson's only heirs, and because the ownership of the photos was never contested, there was no need for litigation of this matter until October 15, 1998, when Claud was adjudicated to be the sole heir to the Johnson estate.  If the photos were the personal property of Thompson, as Anderson claims, and not part of the Johnson estate,

10

then LaVere incorrectly deposited the royalties from the photos into the estate account, and this portion of royalties would not have passed to Claud as heir to the estate. Because the ownership of the photos and copyrights thereto was not the subject matter of the chancery action, there is no identity of subject matter between the actions.

¶14. Additionally, Anderson claims, and there is evidence in the record to support her claim, that each time she attempted to introduce evidence concerning the contract between Thompson and LaVere and ownership of the photographs, the opposing side objected and the chancellor agreed that this was an issue for another time in a different forum. Thus Anderson was not allowed to raise the issue of ownership of the photos or validity of the contract between Thompson and LaVere. Excerpts from the trial to determine heirship of Robert Johnson on October 14, 1998, provide a good example of this:

> Direct Examination of Ms. Anderson
> . . .
> BY MR. NEVAS:
>  Q  Were you aware of any efforts that any member of the family made in connection with Robert Johnson and his music?
>  A  Yes, I am, at a later time.
>  Q  And when was that, Mrs. Anderson?
>  A  That was around 1972, I believe.
>  Q  And who undertook those efforts?
>  A  My sister Carrie
>  Q  And so you know why?
>  A  Well, someone came to see her in reference to brother Robert's music. They told her they wished to exploit the music.
> BY MR. JIM KITCHENS: (Attorney for Claud Johnson) Your Honor, I'm going to interpose an objection at this point. I believe we're getting kind of far afield and this would be irrelevant.
> BY THE COURT: What does this have to do with the issue at hand?
> BY MR. NEVAS: It has to do with the connection between Carrie Thompson and Robert Johnson

BY THE COURT: Well, I think we've already resolved that haven't we?  **I don't see that that has a whole lot of bearing on whether Claud is Robert Johnson's child or not.**

(Emphasis added).

¶15.    The following day, at the close of the hearing, the chancellor gave his opinion, stating in pertinent part:  "The [sole and only] question is, is whether or not the evidence presented by Claud Johnson is sufficiently credible, is sufficiently clear, and sufficiently convincing enough for this court to determine whether or not he, in fact, is the child of Robert Johnson, the blues singer, the one whose picture we have in evidence."

¶16.    Furthermore, in determining that res judicata bars this claim, the circuit court stated that Anderson and Harris **could have** petitioned the chancery court to make a determination that the copyrights to the photographs were rightfully theirs.  As stated above, the doctrine of res judicata may act to preclude the litigation of a claim that "could have been brought" *only if the four identities are present*.  **Pray v. Hewitt**, 254 Miss. 20, 179 So.2d 842 (1965); **Golden v. Golden**, 246 Miss. 562, 151 So.2d 598 (1963).  Not only are the four identities not present in this case, but if Anderson tried, but was not allowed to make her claim of ownership, res judicata cannot bar litigation of the claim in the present action.

    *Identity of the cause of action*

¶17.    A cause of action is "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person; claim."  Black's Law Dictionary 214 (7th ed. 1999).  In the present case, the cause of action was the alleged action or omission of LaVere concerning the 1974 contract between

12

himself and Thompson, and particularly the disposition by LaVere of proceeds from property which was a part of the subject matter of the contract. The claims brought by Anderson included fraud, misrepresentation, and concealment; conversion; unjust enrichment; unfair competition and business practices; breach of contract; and breach of fiduciary duty. The cause of action in the prior suit arose out of the death of Robert Johnson, the opening and administration of his estate, and the determination of his heirs. Clearly these are not the same causes of action. Although the chancellor ultimately ordered that all amounts that had been deposited into the Johnson Estate account be transferred to Claud, there was no finding that all amounts in the account were the property of the estate. Any amounts which were not the property of the estate should not have been transferred to Claud.

*Identity of the parties to the cause of action*

¶18. In order for res judicata to bar litigation of a claim in a second proceeding, the parties to the second action must have also been parties to the first action, or have been in privity with a party in the first action. In the circuit court action from which the present appeal arose, the plaintiffs were Anderson and Harris and the defendants were Claud,[7] LaVere, Delta Haze and Sony. The parties in the first action were Anderson and Harris, who were adverse to Claud. Brumfield was administrator of the Johnson estate and participated in the proceedings, but his position was as fiduciary to the potential heirs of the estate, and thus was not adverse to any of the parties. LaVere claims that he was in privity to a party by way of his contract with

---

[7] Claud Johnson is not a party to this appeal.

Brumfield.    Although LaVere acted as an agent for the estate for the purpose of exploiting Johnson's work, and was apparently deposed by Anderson[8] during discovery, he was not a party to the litigation, nor in privity with a party.    Neither were Delta and Sony parties to the prior litigation by way of their business connections to LaVere.    Because LaVere, Delta, and Sony were not parties to the prior action, this identity is not met.

*Identity of the quality or character of a person against whom the claim is made*

¶19.    Because LaVere, Delta, and Sony were not parties to the prior action, nor in privity to a party, this identity cannot be met.    Thus, none of the four required identities required for res judicata of the claim of ownership of the Johnson photos has been met.

**CONCLUSION**

¶20.    Since the pictures have never been determined to belong to the estate, the chancery court, in the heirship proceeding, did not have the power to adjudicate their ownership. Additionally, Thompson and Anderson were under no requirement to file a claim against the estate for them.    Anderson and Harris are entitled to their day in court, and an opportunity to make their case.    While they make no claim to the property which belonged to Robert Johnson at his death, they do claim three pictures and a note, all of which they claim were the personal property of Carrie Thompson and not the Johnson estate.    There is no evidence that this claim has ever been litigated or that it should have been.    Anderson and Harris have been denied their day in court by an erroneous ruling of the circuit court which found their claims had already

---

[8] Anderson included the transcript of the deposition of LaVere, but this was not submitted as part of the record before the court, and was not introduced into evidence during trial.

been adjudicated, and thus barred by the doctrine of res judicata. Therefore, we reverse the circuit court's judgment and remand this case for a trial consistent with this opinion.

¶21.    **REVERSED AND REMANDED.**

**WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. SMITH, C.J., AND EASLEY, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**