United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 18, 2006**

Charles R. Fulbruge III
Clerk

REVISED AUGUST 24, 2006

In the

United States Court of Appeals

for the Fifth Circuit

_____

m 04-60204

_____

Bobby J. Black and Jane Doe, by and through her mother
and next friend, Bobby J. Black

Plaintiff-Appellant,

VERSUS

North Panola School District, Bonnie Smith, Jesse Orange and Finis Sanders,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Mississippi
m 2:03-CV-199

_____

Before SMITH and STEWART, Circuit Judges, and CRANE, District Judge.[*]

_____

[*]District Judge of the Southern District of Texas, sitting by designation.

CRANE, District Judge:

Bobby J. Black sued North Panola School District, Bonnie Smith, Jesse Orange and Finis Sanders (collectively "NPSD") asserting various claims under 42 U.S.C. § 1983, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act and the Civil Rights Act of 1964. The district court granted summary judgment in favor of NPSD on all claims, and Black appealed. We now affirm.

## I.    Background

Black is the mother and next friend of Jane Doe, who contracted an illness as an infant that left her developmentally disabled. During the 2000-01 school year, Jane was enrolled as a special education student at Como Middle School within NPSD. In April 2001, she was the only female of five students in Finis Sanders's fourth period special education math class. Sanders's fourth period class lasted from 10:40 a.m. until 11:30 a.m, with a five minute break between classes. Due to problems during break time in the second floor boys' restroom, Como Middle School Principal Jesse Owens required a male teacher to supervise the restroom between classes. Sanders was assigned the area near the boys' restroom, which was approximately fifty feet from his classroom. Another teacher, Leroy Richardson, supervised the hallway area between his classroom and Sanders's. Sanders's classroom contained two bookshelves located three feet from the back wall. Carpet was placed in the hidden space created by the bookshelves. Black claims that two male classmates sexually assaulted Jane in the back of Sanders's classroom during the break time between classes.

After the alleged assault on Jane, Black filed suit in Mississippi state court against NPSD, its superintendent, Bonnie Smith, Orange, Sanders, and ten John Does. Black asserted negligence

claims under the Mississippi Tort Claims Act, MISS. CODE ANN.§§ 11-46-1, et seq. (West 2006)

("MTCA").  After a bench trial, the trial court entered judgment in favor of Black and awarded

her $20,197.03 for past medical and therapy bills and future therapy treatment.  The court

dismissed the claims against the defendants in their individual capacities because they could not be

held personally liable under the MTCA for acts or omissions occurring within the course and

scope of their employment.  The Mississippi Court of Appeals affirmed the trial court's judgment.

*Doe ex. rel. Doe v. North Panola Sch. Dist.*, 906 So.2d 57 (Miss. Ct. App. 2004).

While her state court appeal was pending, Black filed suit against NPSD, Smith, Orange

and Sanders in the Northern District of Mississippi.  Black's complaint, nearly identical to her

state court petition, alleged that Doe was sexually assaulted by two male classmates in Sanders's

classroom during break time between classes.  Black asserted recovery based on 42 U.S.C.

§ 1983, Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, Section 504 of the

Rehabilitation Act, 29 U.S.C. §§ 794, and the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d.[1]

NPSD moved to dismiss Black's claims, or in the alternative, for summary judgment, on

the grounds that Black's federal action was barred by res judicata.  Black timely responded to

NPSD's motion; however, she subsequently moved to permit supplementation of her response,

arguing that her federal claims were barred from her prior state court action by the MTCA.  The

---

[1]Black also refers to a "retaliatory abandonment" claim.  Black claims that because Doe withdrew from school after a separate incident with one of the alleged assaulter's relatives, she receives only one and a half hours of schooling, violating her constitutional right to a public education.  Black's pleadings wholly fail to assert that Doe suffered retaliation as a result of bringing the state suit in violation of her federal constitutional or statutory rights. However, to the extent Black established a separate claim based on her reduced schooling, she failed to pursue it.  She further failed to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss.  Her failure to pursue this claim beyond her complaint constituted abandonment. *See Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001).

district court denied Black's motion to permit supplementation, agreed that her claims were barred by res judicata, and dismissed Black's suit by judgment entered on February 9, 2004.

## II.    Standard of Review

We review the grant of summary judgment, legal determination of res judicata and Eleventh Amendment immunity de novo.  *See Vera v. Tue*, 73 F.3d 604,607 (5th Cir. 1996) (summary judgment); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 546 (5th Cir. 2001) (res judicata); *Cozzo v. Tangipahoa Parish Council-President Gov't.*, 279 F.3d 273, 280 (5th Cir. 2004) (Eleventh Amendment immunity).

## III.    Discussion

### A.    Res Judicata Generally

To determine the preclusive effect of a state court judgment in a federal action, "federal courts must apply the law of the state from which the judgment emerged." *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096-97 (5th Cir. 1995).  Under Mississippi law, the doctrine of res judicata bars parties from litigating claims "within the scope of the judgment" in a prior action. *Anderson v. LaVere*, 895 So. 2d 828, 832 (Miss. 2004).  "This includes claims that were made or should have been made in the prior suit." *Id.*(internal quotation marks and citations omitted). Res judicata "reflects the refusal of the law to tolerate a multiplicity of litigation." *Little v. V & G Welding Supply, Inc.*, 704 So. 2d 1336, 1337 (Miss. 1997).  "It is a doctrine of public policy designed to avoid the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent

4

decisions." *Harrison v. Chandler-Sampson Ins., Inc*., 891 So. 2d 224, 232 (Miss. 2005) (internal quotation marks and citation omitted).

Under Mississippi law, four identities must be present before the doctrine of res judicata will apply: (1) identity of subject matter; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality or character of a person against whom a claim is made. *Id*.; *see also Green v. Amerada Hess Corp*., 707 F.2d 201, 206-07 (5th Cir. 1983). If these four identities are present, the doctrine of res judicata will prevent the parties from relitigating all issues that were decided or could have been raised in the previous action. *Harrison*, 891 So. 2d at 232.

## B.   The Four Identities

### a.   *Subject Matter and Cause of Action*

Although Mississippi courts have not defined explicitly the identity of subject matter, they have defined the identity of cause of action. The identities are distinct but related, and as such, examination in tandem illustrates their distinctions more readily. In older cases, the Mississippi Supreme Court referred to subject matter identity as identity "in the thing sued for." *Forbes v. Columbia Pulp & Paper Co.*, 340 So. 2d 734, 736-37 (Miss. 1976); *Pray v. Hewitt*, 179 So. 2d 842, 844 (Miss. 1965); *Campbell v. Campbell*, 97 So. 2d 527, 528 (Miss. 1957). Most recently, the Mississippi Supreme Court defined subject matter as the "substance" of the lawsuit. *Harrison*, 891 So. 2d at 232-33.

In contrast, "[i]dentity of the cause of action exists when there is a commonality in the underlying facts and circumstances upon which a claim is asserted and relief is sought from the two actions." *City of Jackson v. Lakeland Lounge of Jackson, Inc*., 688 So. 2d 742, 749 (Miss.

5

1996) (internal quotation marks and citation omitted). In other words, in the res judicata context, a cause of action is a group of operative facts that entitles a petitioner to seek remedy in court. *See LaVere*, 895 So. 2d at 835. The requirement that the litigation "involve the same claim premised upon the same body of operative fact as was previously adjudicated" comports with the prohibition against claim-splitting protected by res judicata. *Harrison*, 891 So. 2d at 234. When making this notably difficult determination, Mississippi courts "look[] past the legal bases asserted and [rely] more on the factual and transactional relationship between the original action and the subsequent action." *Id*. This court applies a similarly transactional approach. *See id.*; *see also Smith v. Safeco Ins. Co.*, 863 F.2d 403, 404 (5th Cir. 1989) (finding that because the claims arose out of a common nucleus of operative fact, they comprised one transaction, and res judicata barred a second suit).

Several Mississippi cases analyzing res judicata further illustrate the relationship between the identities of subject matter and cause of action. In *Lakeland Lounge*, an adult-entertainment club owner sought to declare a city ordinance that regulated his business unconstitutional under the First Amendment. 688 So. 2d at 744. After the federal district court declared the ordinance unconstitutional, the city filed a state action to enjoin the club owner's operations, arguing that he violated the ordinance. *Id*. at 744-45. The state trial court ruled that the ordinance was unconstitutionally vague and violated the equal protection clause. *Id*. at 746. In holding that res judicata barred the state action challenging the ordinance's constitutionality, the Mississippi Supreme Court found identity of subject matter: the zoning ordinance and its constitutionality. *Id*. at 749. Furthermore, although "the federal court cases determined the constitutionality of the [c]ity's public policy determinations involving the secondary effects of adult entertainment and the

6

pending ordinance doctrine, the underlying issue was topless entertainment." *Id*. Because the underlying facts were the same, the city did not destroy the identity of cause of action by raising a new legal theory in the state action. *See id.*

In *Black v. City of Tupelo*, 853 So. 2d 1221, 1223 (Miss. 2003), the plaintiff filed suit in federal court alleging various misconduct by city police officers. After the suit was dismissed, the plaintiff filed suit in state court based on the same allegations. *Id*. The Mississippi Supreme Court held that the subject matter of the suits was the same: they pertained to alleged incidents within the police department. *Id*. at 1225. Likewise, because the allegations in the first suit were "based on the same underlying facts and circumstances" as in the second suit, the causes of action were also identical. *Id*.

In *Little*, the Mississippi Supreme Court held that res judicata barred a state wrongful death suit arising out of an explosion that killed two welders. 704 So. 2d at 1338. The court determined that there was identity of subject matter because the subjects of both suits were the welders' deaths. *Id*. Although the prior federal suit was a products liability case premised on a design defect, while the state suit was premised on a manufacturing defect, "the crucial fact [was] that [the appellants were] seeking to hold an entity liable for the deaths of the welders." *Id*. Moreover, the appellants relied on the same facts and circumstances alleged in the federal suit: the release of a dangerous gas that caused an explosion killing two men. *Id*. Thus, there was a commonality of the underlying facts and circumstances, and the second identity of cause of action was met. *Id*.

By contrast, in *LaVere*, the court held that there was no identity of subject matter between two actions. 895 So. 2d at 895. The first action involved the administration of the estate of

Robert Johnson, a blues artist. *LaVere*, 895 So. 2d at 829-30. In the estate administration action, the trial court determined that Claud Johnson was the sole heir to the estate. *Id.* at 830. In a second lawsuit, two legatees of the decedent's sister's estate sued Claud Johnson, Stephen LaVere, and others, alleging conversion, fraud and breach of contract arising out of a contract between Johnson and LaVere regarding rights to certain photographs of the artist. *Id.* The Mississippi Supreme Court concluded that the subject matter of the first action was the administration of the estate, including the determination of heirship. *Id.* at 833. The subject matter of the second action was the ownership of the photographs and associated copyrights. *Id.* With respect to the identity of causes of action, the first suit "arose out of the death of Robert Johnson, the opening and administration of his estate, and the determination of his heirs." *Id.* at 835. However, the second suit involved the alleged acts or omissions of LaVere concerning the contract. *Id.* These were not the same causes of action. *Id.*

In this case, Black argues that neither identity is established. She argues that identity of subject matter exists only when the primary right and duty or wrong are the same in each action. *Reid*, 814 So. 2d at 145 ("[t]he primary test for comparing causes of action is whether the primary right and duty or wrong are the same in each action."). Black urges the court to employ an analysis similar to that for subject matter jurisdiction, where different statutory bases and rights determine courts' jurisdiction. *See Common Cause of Mississippi v. Smith*, 548 So. 2d 412, 414 (Miss. 1989). Her argument is misplaced. First, Mississippi law fails to support the appellant's contention that the identity of subject matter for res judicata purposes is determined according to a subject matter jurisdiction analysis. No case discussing the identity of subject matter alludes to subject matter jurisdiction. Second, the "primary right" language in *Reid* discussed the identity of

8

cause of action, not subject matter. 841 So. 2d at 145. Third, the identity of subject matter is defined as the underlying issue before the court, not the legal basis for recovery. *See Lakeland Lounge*, 688 So. 2d at 749.

Regarding the identity of cause of action, the appellant again cites *Reid*'s "primary right or duty" language to support her argument that two definitions of cause of action exist: a legal one, defined by the "primary right or duty", and a factual one, defined by the transactional test discussed above. Based on her legal definition of cause of action, she contends that there is no identity of cause of action because she is vindicating different rights in her federal suit.[2] Again, Black misconstrues *Reid* regarding the identity of cause of action. Although *Reid* referred to primary right and duty as the test for a cause of action, it specifically defined the identity of cause of action as "identity of underlying facts and circumstances upon which a claim is asserted and relief sought in the two actions." 814 So. 2d at 145. Furthermore, because the *Reid* plaintiffs sought insurance coverage for their son's injuries in a prior proceeding arising out of the same accident and the same insurance policy, their subsequent action for uninsured motorist coverage raised the same cause of action. *Id.* Thus, *Reid* provides no support for Black's assertion that there is a primary right or duty test separate from the transactional test for determining a cause of

---

[2]In support of her argument that she seeks to vindicate her federal rights, the appellant asserts that "[n]o mention was ever made" of her constitutional rights, her right to reasonable accommodation, or disparate treatment because of her sex in her state action. However, her § 1983 claims expressly allege that Doe's rights were violated as a result of NPSD's failure to provide supervision and protection, and that such failure to provide protection "caused the damages caused by the sexual assaults" on Doe. These allegations are nearly identical to appellant's state claims. With respect to her ADA claim, the appellant specifically avers that Doe needed protection, an obvious reference to her general claim that NPSD failed to protect Doe from the sexual assaults. Appellant's Rehabilitation Act and Civil Rights Act claims consist of conclusory allegations that her rights were violated by NPSD's ongoing refusal to accommodate Doe's needs, and that Doe was discriminated against by reason of sex and disability. She provides no additional factual basis for those claims apart from the general facts set forth in her complaint. Thus, the appellant's federal action is substantially based on the same underlying facts raised in her state action.

9

action.  *See id.*; *see also Harrison*, 891 So. 2d at 233-34 (it is the facts giving rise to a claim and not the legal theory for the claim that defines cause of action).  Black's federal suit alleged different theories of liability, which are irrelevant to the determination of identity of cause of action.  *See Harrison*, 891 So. 2d at 233-34.

Thus, identity of subject matter turns on a general characterization of the suit.  It is the substance of the action.  By contrast, identity of cause of action is defined by the underlying group of facts giving rise to a claim.  In Black's case, the subject matter of both the first and second suit can be described as the sexual assault of Jane Doe.  The causes of action are the underlying facts giving rise to Jane Doe's claims: her sexual assault at the hands of two boys in her unsupervised classroom.  Identical factual allegations of sexual assault support the legal theories in both lawsuits.  Accordingly, there are identities of subject matter and cause of action.

### b.    *Identity of Parties and Identity of Quality of Parties*

On appeal, Black contests the presence of the third and fourth identities related to parties.  However, in the district court, Black expressly conceded that these identities were present, and she addressed only the first two identities when contesting the defendants' summary judgment motion.  "A party's concession of an issue means the issue is waived and may not be revived." *Smith v. United States*, 328 F.3d 760, 770 (5th Cir. 2003).  By conceding the issues in the district court and failing to address them, Black waived any argument regarding the third and fourth identities.  *See id.* (parties waived issues by expressly stating in their motion for summary judgment that they conceded the issues and by failing to provide any argument on those issues).

Moreover, the identity of parties and identity of the quality or character of parties are satisfied.  Black was the plaintiff in both suits.  Both suits were brought against NPSD and the

10

individual school officials based on NPSD's conduct and the individual officials' capacity as employees of NPSD. Therefore, identity of the parties and identity of their quality or character were established. *See Little*, 704 So. 2d at 1339 (strict identity of parties is not required if the parties in the second suit are sufficiently connected with the first suit such that their interests would be affected as if they were parties); *Black*, 853 So. 2d at 1225 (identities of parties and of their quality were established where police officers who were named only in the second suit are employees of the City of Tupelo, which was named in both suits); *Estate of Anderson v. Deposit Guar. Nat'l Bank*, 674 So. 2d 1254, 1257 (Miss. 1996) (finding all four identities met in second suit against bank arising out of its powers as trustee, bank officers named only in second suit operated in their capacities as employees of the bank in managing the trust). Black's contention that these identities are not established because the individual defendants were sued only in their official capacities in the state suit and individually in the federal suit is without merit. Thus, all four identities were present in Black's federal action, and the district court properly dismissed her claims on res judicata grounds.

> **C.      The District Court's Order of Analysis of the Identities**

Black also argues that the district court improperly considered whether she could have brought her claims before determining whether the four identities existed. Under the Mississippi law of res judicata, once the four identities are established, any claims that could have been brought in the prior action are barred. *LaVere*, 895 So. 2d at 832-33. Black is correct that this "could have" rule comes into effect only once the four identities have been established. *See id.* at 835. However, the district court did not first conclude that Doe could have brought her federal claims in state court before determining whether res judicata was applicable. Rather, the court

11

found that the elements of res judicata were satisfied. It then reached the issue of whether the federal constitutional claims could have been litigated with the state negligence claims. There was no error in the order of the district court's analysis.

### D. Sovereign Immunity

Black further contends that, even if res judicata applies, she is not barred from asserting her federal claims because Mississippi has not waived its sovereign immunity. She argues that Mississippi's waiver of sovereign immunity must be expressly granted by statutory provision. NPSD contends that Black forfeited this argument by failing to raise it in the district court.[3] Generally, "[t]his Court will not consider an issue that a party fails to raise in the district court absent extraordinary circumstances." *Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999). Extraordinary circumstances exist when the issue involved is purely a legal one and failure to address it would result in a manifest miscarriage of justice. *Verdin v. C & B Boat Co.*, 860 F.2d 150, 155 (5th Cir. 1988). Black contends that sovereign immunity may be raised for the first time because (a) this court's review is de novo, and (b) sovereign immunity is jurisdictional. However, this contention lacks merit. Even on de novo review, a party may not raise new legal arguments. *See, e.g. Johnson v. Sawyer*, 120 F.3d 1307, 1316 (5th Cir. 1997) ("Although we can affirm a summary judgment on grounds not relied upon by the district court, those grounds must at least have been proposed or asserted in that court by the movant"); *FDIC v. Laguarta*, 939 F.2d 1231, 1240 (5th Cir. 1991) (refusing to affirm summary judgment on grounds "neither raised below . . . nor even raised sua sponte by the district court"). Further, the sovereign immunity that

_____

[3]Black argues that she preserved the issue by attempting to file a supplemental brief in the district court asserting that she could not have litigated her federal causes of action in state court because Mississippi has not waived sovereign immunity for those claims. However, the district court denied her request to file the supplemental brief.

Black urges is the state's immunity from suit in its own courts, which she contends precluded the state court from exercising jurisdiction. That form of sovereign immunity has no effect on the federal court's jurisdiction, which may be raised for the first time on appeal. *See McDonal v. Abbott Labs.*, 408 F.3d 177, 182 (5th Cir. 2005). The purely legal nature of Black's argument permits a succinct discussion of sovereign immunity. *See Verdin*, 860 F.2d at 155.

Under the Eleventh Amendment, states retain immunity from private suit in their own courts. *Alden v. Maine*, 527 U.S. 706, 754, 119 S. Ct. 2240, 2267, 144 L. Ed. 2d 636 (1999). However, the states' immunity is not unlimited; states cannot disregard the Constitution or valid federal law under the guise of the Eleventh Amendment. *Id*. at 754-55, 119 S. Ct. at 2266. Thus, two constitutional principles limit state sovereign immunity. *Id*. First, states are immune from suit only in the absence of their consent. *Id*. at 755, 119 S. Ct. at 2267. Where, on its own initiative, a state enacts a statute that consents to suit, it abandons sovereign immunity. *Id*. An exception exists: under § 5 of the Fourteenth Amendment, states cannot prohibit individuals from bringing private suits in state court under § 1983. *Id*. at 756, 119 S. Ct. at 2267(internal citation omitted). When Congress enacts appropriate legislation, such as § 1983, pursuant to its enforcement power under § 5, it may properly assert authority over the States that is otherwise unauthorized by the Constitution. *Id*. (internal citations omitted).[4]  Second, state sovereign immunity prohibits private suits against States but not against lesser entities. *Alden*, 527 U.S. at

---

[4]*See also U.S. v. Georgia*, \*\*\* U.S. \*\*\*, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006); *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed.2d 820 (2004); *c.f. Board of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001). In *Garrett*, the Supreme Court held that the Americans with Disabilities Act was not appropriate legislation for Section 5 enforcement; therefore, Congress did not abrogate state sovereign immunity for private suits under the ADA in state court. *Id.* at 373-74, 121 S. Ct. at 967-68. This court does not reach the issue of whether Black's claims under the ADA and Section 504 of the Rehabilitation Act are barred by sovereign immunity because NPSD is not an arm of the state. *See infra.* As such, NPSD is not entitled to immunity from any of Black's claims in state or federal court. *Id.*

13

756, 119 S. Ct. at 2267. Eleven Amendment immunity does not extend to suits prosecuted against municipalities or other governmental entities that are not considered arms of the state. *Id*.(citing *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. at 280, 97 S. Ct. 568; *Lincoln County v. Luning*, 133 U.S. 529, 10 S. Ct. 363, 33 L. Ed. 766 (1890)).

### a. Mississippi's Consent to Suit

Through the MTCA, Mississippi waived its immunity in a limited fashion for certain tort actions. *Univ. of Mississippi Medical Center v. Robinson*, 876 So. 2d 337, 339 (Miss. 2004). By definition, the MTCA is the exclusive state remedy against a governmental entity and its employees for tortious acts or omissions which give rise to civil liability. MISS. CODE. ANN. § 11-46-7(1); *Elkins v. McKenzie*, 865 So. 2d 1065, 1078 (Miss. 2003) (internal citations omitted); *L.W. v. McComb Separate Municipal School District*, 754 So. 2d 1136, 1138 (Miss. 1999); *Moore v. Carroll County, Mississippi*, 960 F. Supp.1084, 1088 (N.D. Miss. 1997). For purposes of the MTCA, a school district is a "political subdivision" of the state. MISS. CODE ANN. § 11-46-1(i). The MTCA waives sovereign immunity for several types of claims against governmental entities and their employees acting in the course and scope of their employment. *See* MISS. CODE ANN. § 11-46-9. Its waiver of immunity is valid only to the extent the governmental entity carries excess liability insurance. MISS. CODE ANN. § 11-46-16(2); *Lincoln County School District v. Doe*, 749 So.2d 943 (Miss. 1999) (school district did not carry effective liability insurance to waive immunity for plaintiff's personal injury claim). The Tort Claims Fund and self-insurance plans under the MTCA provide excess liability insurance for governmental entities against liabilities "outside the provisions of this chapter, including but not limited to liabilities arising from Sections 1983 through 1987 of Title 42 of the United States Code ..."

14

MISS. CODE ANN. § 11-46-17(2); *see also McGehee v. Depoyster*, 708 So. 2d 77, 82 (Miss. 1998).  The MTCA also preserves all immunities granted by the Eleventh Amendment of the United States Constitution.  MISS. CODE ANN. § 11-46-5(4).

Black argues that because the MTCA did not expressly waive immunity for her federal claims, she was barred from asserting them in state court.  Although the Mississippi Supreme Court has yet to explicitly hold that the MTCA's waiver of sovereign immunity is the exclusive waiver for all actions brought in state court, its decisions regarding the nature of federally created rights and the MTCA's excess liability insurance requirement suggest that the MTCA waives immunity for Black's federal claims.  *See McGehee*, 708 So. 2d at 82; *Elkins*, 865 So. 2d at 1078. First, Mississippi distinguishes constitutional violations from ordinary torts.  *See Barrett v. Miller*, 599 So. 2d 559, 564 (Miss. 1992).  It is well established that Mississippi courts share concurrent subject matter jurisdiction with federal courts in the enforcement of federally created rights. *Burrell v. Mississippi State Tax Commission*, 536 So. 2d 848, 863 (Miss. 1988); *Elkins*, 865 So. 2d at 1071; *see also Martinez v. California*, 444 U.S. 277, 284, 100 S. Ct. 553, 558, 62 L. Ed. 2d 481 (1980); *Howlett by and through Howlett v. Rose*, 496 U.S. 356, 379, n. 20, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990).  When Mississippi courts enforce federally created rights, they must follow the federal interpretations of those rights. *Burrell*, 536 So. 2d at 864; *Howlett*, 496 U.S. at 371, 110 S. Ct. at 2440.

Second, the MTCA notice requirement does not apply to § 1983 claims.  *McGehee*, 708 So.2d at 81 (citing *Felder v. Casey*, 487 U.S. 131, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988)). The Mississippi Supreme Court recognized that enforcement of the MTCA notice requirement could yield different outcomes for § 1983 claims depending on whether they were brought in state

15

or federal court. *Id.* at 81. This risk was impermissible because "[s]tates may not apply such an outcome-determinative law when entertaining substantive federal rights in their courts." *Id.* at 81. Thus, the court acknowledged the supremacy of federal law governing federal causes of action. *See id*; *accord Felder*, 487 U.S. at 138, 108 S. Ct. at 2306-07 (internal citations omitted); *Howlett*, 496 U.S. at 375, 110 S. Ct. at 2442.

Third, the MTCA fails to insulate the state and its subdivisions from liability for violations of constitutional rights. *McGehee*, 708 So. 2d at 82(specifically concluding that the MTCA "expressly places § 1983 actions beyond its purview."). The MTCA's Tort Claims Fund establishes self-insurance plans for political subdivisions "to provide coverage for liabilities outside the provisions of this chapter, including but not limited to liabilities arising from Sections 1983 through 1987 of Title 42 of the United States Code …" *Id.* (quoting MISS. CODE ANN. § 11-46-17(2) (emphasis omitted)). The Tort Claims Fund permits Mississippi's liability for its subdivisions' acts only to the extent that resulting judgments do not burden the state fisc. MISS. CODE ANN. § 11-46-5(1); *see also McGehee*, 708 So. 2d at 82; *Alden*, 527 U.S. at 751, 119 S. Ct. at 2264-65. Although the MTCA does not explicitly waive immunity for federal causes of action, its acknowledgment and coverage of liabilities outside the MTCA effectively waives immunity. *See* MISS. CODE ANN. § 11-46-17(2); *McGehee*, 708 So. 2d at 82.

Black's sovereign immunity argument is not novel. The Supreme Court addressed the question of whether a defense of sovereign immunity, unavailable in federal court, would be available to a school board otherwise subject to suit in state court. *Howlett*, 496 U.S. at 358-59, 110 S. Ct. at 2433. The petitioner, a former high school student, filed a state court complaint alleging § 1983 claims against his former school district and principal. *Id*. at 359, 110 S. Ct. at

16

2433. The school district argued that the state court lacked jurisdiction to hear the petitioner's federal claims because the state of Florida did not waive sovereign immunity for § 1983 claims asserted in state court. *Id*. at 359, 110 S. Ct. at 2434. The Court rejected the school district's argument, holding "[t]o the extent that the Florida law of sovereign immunity reflects a substantial disagreement with the extent to which governmental entities should be held liable for their constitutional violations, that disagreement cannot override the dictates of federal law." *Id*. at 377-78, 110 S. Ct. at 2444. Thus, no state may employ its common law principles of sovereign immunity to redefine the contours of a federally created right or defense. *Id*. at 379-380, 110 S. Ct. at 2445 (internal citations and quotation marks omitted); *accord Martinez*, 444 U.S. at 284, n. 8, 100 S. Ct. at 558, n. 8; *Felder*, 487 U.S. at 151, 108 S. Ct. at 2313. Black's contention that by refusing to waive immunity, Mississippi could prohibit suits defending federal rights from state courts fails under *Howlett*.

### b.      *Suits Against Lesser Entities*

Thus, Black's argument has merit only if NPSD is considered an arm of the state entitled to Eleventh Amendment immunity. "The second important limit to the principle of sovereign immunity is that it bars suits against States but not lesser entities." *Alden*, 507 U.S. at 756, 119 S. Ct. at 2267. Historically, when states imposed duties on municipalities by charter or statute, they withdrew municipal immunity for actions arising out of the performance or nonperformance of those duties. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 67 n. 7, 109 S. Ct. 2304, 2310, 105 L.Ed.2d 45 (internal citations omitted). Accordingly, lesser governmental entities such as counties and municipalities are not considered arms of the state for purposes of Eleventh Amendment immunity. *Id.*; *see also Alden*, 527 U.S. at 756-57, 119 S. Ct. at 2267-68 (internal

17

citations omitted). Likewise, Mississippi courts routinely entertain § 1983 actions against municipalities and individual defendants acting under color of state law in accordance with substantive federal law. *Burrell*, 536 So. 2d at 864; *Starnes v. City of Vardaman*, 580 So. 2d 733, 737 (Miss. 1991); *Mallery v. Taylor*, 805 So. 2d 613, 620 (Miss. 2002) (citing *Howlett*, 496 U.S. at 375-76). To determine whether NPSD is an arm of the state entitled to Eleventh Amendment immunity, this court examines the district according to the six following factors: "(1) whether the state statutes and caselaw view the agency as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property." *United States ex. rel. Barron v. Deloitte & Touche, L.L.P.*, 381 F.3d 438, 440 (5th Cir. 2004) (citing *Hudson v. City of New Orleans*, 174 F.3d 677, 679 (5th Cir. 1999)); *Cozzo*, 279 F.3d at 281. Generally, school boards and districts are not arms of the state shielded by Eleventh Amendment immunity. *See Mt. Healthy*, 429 U.S. at 280, 997 S. Ct. 568 (finding under Ohio law, although the school board received guidance and significant funding from the state, it also held extensive powers to issue bonds and levy taxes, and therefore, the district was more similar to a municipality than an arm of the state); *Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129, 131-32 (5th Cir. 1986) (finding that under Louisiana law the school board enjoyed a wide degree of local autonomy, that it was predominantly sustained by local funds, and that a judgment against it would not impose upon the state treasury; therefore, the school board was not entitled to Eleventh Amendment immunity notwithstanding Louisiana's characterization of the board as an "agency" of the state).

18

In light of the fundamental purpose of the Eleventh Amendment—protecting state treasuries—the source of the entity's funding is given the most weight. *Barron*, 381 F.3d at 440 (internal citation omitted); *Cozzo*, 279 F.3d at 281 (internal citation omitted). "To determine if the state treasury is being protected, this court looks first to whether the state would be liable for a judgment against the defendant and then to whether the state would be liable for the defendant's general debts and obligations." *Barron*, 381 F.3d at 440 (internal citation and quotation marks omitted). As a Mississippi public school district, NPSD has the power to levy and collect taxes independently from the state. MISS. CODE ANN. § 37-57-1. NPSD's school board may also issue bonds to raise funds for school construction and improvements. MISS. CODE. ANN. § 37-59-3. NPSD receives large grants of money directly from the State of Mississippi for educational programs. MISS. CODE ANN. § 37-151-7. NPSD must apply and receive state money for the repair, maintenance and construction of school facilities. MISS. CODE ANN. §§ 37-45-21; 37-47-1, et. seq. Thus, the burden of funding in Mississippi is more equitably divided between the local school districts and the state. *c.f. Minton*, 308 F.2d at 132 (Louisiana school district's funding came from predominantly local sources).

However, in addition to an entity's source of funding, the court considers whether the state treasury would be liable for a potential judgment entered against the school district. *See Barron*, 381 F.3d at 440 (citing *Vogt v. Bd. of Comm'rs.*, 294 F.3d 684, 693 (5th Cir. 2002)); *Minton*, 308 F.2d at 132. As discussed above, the MTCA provides the only remedy for claims against the state and its political subdivisions. MISS. CODE ANN. § 11-46-7. School districts must self-insure through the Tort Claims Fund and carry excess liability insurance to protect against judgments arising from actions not covered by the MTCA. MISS. CODE ANN. §§ 11-46-16(2);

19

11-46-17(2). Any judgment entered against a school district would be paid through the Tort Claims Fund and excess liability insurance. *Id.* A potential judgment would not burden the public fisc. *See id.* Therefore, the local source of NPSD's operational funding, along with its required excess insurance for potential judgments, weighs in favor of finding that NPSD is not an arm of the state. *See Barron*, 381 F.3d at 440; *Minton*, 308 F.2d at 131-32.

Turning to the other factors, the Mississippi legislature's definition of "political subdivision" includes school districts and school boards. MISS. CODE ANN. § 11-46-1(i). Mississippi courts routinely hold that a school district is a political subdivision consistent with the MTCA's definition. *See e.g. Lang v. Bay St. Louis Waveland Sch. Dist.*, 764 So.2d 1234, 1236 (Miss. 1999); *Lincoln County*, 749 So. 2d at 945; *L.W. v. McComb Separate Municipal Sch. Dist.*, 754 So. 2d 1136, 1139 (Miss. 1999). However, the plain assertion that a school district is a political subdivision or arm of the state does not determine whether the entity is entitled to Eleventh Amendment protection. *Minton*, 308 F.3d at 131; *see also Howlett*, 496 U.S. at 379-380. Thus, to the extent this factor weighs in favor of finding that the school district is an arm of the State based on the MTCA's definition, it is outweighed by federal law. *Howlett*, 496 U.S. at 379-80.

The third and fourth factors–the degree of the entity's local autonomy and the entity's concern with local problems–weigh heavily towards finding that NPSD is not an arm of the state. Under Mississippi law, NPSD and its board have the power to organize and operate the schools according to the school's best interests, manage and control the district's real and personal property, construct and manage school facilities and improvements, prescribe and enforce rules for government of the district, direct the superintendent to make payments for lawful purposes

20

from the funds available to the district, regardless of the funds' source, employ district personnel, expend local school activity funds and other available school district funds, and acquire real property in its own name, and enter into contracts with other political subdivisions to carry out school board duties. MISS. CODE ANN. § 37-7-301. Accordingly, Mississippi vests broad power and discretion in NPSD to autonomously manage local educational concerns. *Id*.; *see also Minton*, 308 F.3d at 132.

Finally, the right to hold property and the entity's ability to sue and be sued in state court are the least significant factors. *Cozzo*, 279 F.3d at 281 (internal citation omitted). First, NPSD's right to hold property is granted by statute. MISS. ANN. CODE § 37-7-301(aa). Second, the MTCA permits NPSD to be sued. MISS. CODE ANN. § 11-46-5(1). To the extent these factors may be considered, they weigh in favor of finding that NPSD is not an arm of the state.

Upon consideration of these factors, we conclude that NPSD is not an arm of the state of Mississippi; therefore, it is not entitled to Eleventh Amendment immunity in federal or state court. *See Howlett*, 496 U.S. at 379-380, 110 S. Ct. at 2445 (internal citations omitted); *Minton*, 308 F.3d at 131-32. Black cannot escape the effect of res judicata by arguing that her federal claims would have been barred in her state action.

## IV.  Conclusion

Black could have asserted each of her federal claims in her state action. She chose not to do so at her own risk. "Where one has a choice of more than one theory of recovery for a given wrong, she may not assert them serially in successive actions but must advance all at once on pain of the bar of res judicata." *Walton v. Bourgeois*, 512 So. 2d 698, 702 (Miss. 1987). Likewise, "[s]ection 1983 does not override state preclusion law and guarantee petitioner a right to proceed

21

to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims." *Migra v. Warren City School Dist. Bd. of Educ.* 465 U.S. 75, 85, 104 S. Ct. 892, 898, 79 L. Ed. 2d 56 (1984).  Because none of Black's federal claims against NPSD would have been barred by sovereign immunity in Mississippi state court, the four identities between her state and federal actions are present.  Thus, res judicata bars Black's federal action.  The district court's judgment is affirmed.